EVANS *v.* ENOCO COLLIERIES, INCORPORATED, ET AL.

[No. 18,087. Filed February 15, 1951.]

*Paul P. Boyle,* of Terre Haute, for appellant.

*J. Emmett McManamon,* Attorney General, *Glen F. Kline,* Deputy Attorney General; and *Gambill, Dudley & Cox,* of Terre Haute, for appellee.

MARTIN, J.—This is an appeal from a decision of the Review Board of the Indiana Employment Security Division, holding that the claimant voluntarily quit his employment without good cause on August 17, 1949, and is subject to the statutory penalty provided by the

Indiana Employment Security Act (Burns' 1951 Replacement, § 52-1539).

The error relied upon for reversal is: the decision of the Review Board of the Indiana Employment Security Division, as expressed by the majority opinion, is contrary to law.

The appellant contends that the decision is contrary to law for the reason that there is no direct evidence and no basis in the evidence for a reasonable inference to support the finding that the appellant voluntarily quit his job; nor is there evidence that his leaving his work on August 17, 1949, was not for good cause.

The claimant had been employed by the employer, a coal mine operator, as a "shooter" since October, 1948. Powder was not used, the coal was blasted by air. On August 16, 1949, the claimant complained to his boss that he had no water hose and that the condition of the air tubing was bad. The mine boss agreed to supply new hose and tubing and promised that they would be at the mine the next morning, August 17, 1949. The claimant, on reporting for work, complained that neither the water hose nor the new tubing were available and had not been delivered to the location where he was working. The claimant completed two shootings with the tubing he had used the previous day and about which he had complained. About 10:00 A. M., he again complained to the mine boss regarding the condition of the tubing and the lack of water hose. It is undisputed that the water hose had not been delivered as promised. Appellant testified it was so dusty he could not see. It was shown by the evidence that the appellant was under a doctor's care and that dust was injurious to his health.

John Stachura, the mine superintendent, testified that it was a standing order not to shoot without sprinkling. This was the second day the unit boss had not supplied

a water hose, although he had promised to do so. Mr. Stewart, the unit boss, testified as follows:

"Yes, we were in controversy over some sprinkling hose and I told Mr. Evans if he did not want to do the work that way, just one other thing he could do. To explain more fully, in processing in coal blasting, we use sprinkling for the comfort of the men, it is used before blasting and we do that of our own volition and Mr. Evans did not want to blast this place without sprinkling the floor, and that is when I told him if he did not want to do that way, one other thing he could do."

Appellant chose to leave and returned to the mine the following Monday morning, "the next hoisting day," but was refused permission to pick up his lamp and go below.

The other shooters in the mine were at the time using hose for sprinkling before shooting and appellant tried to borrow hose for that purpose but was unable to obtain such hose.

In the record before us in this case the conclusion is inescapable that the unit foreman, Mr. Stewart, requested appellant to do work under less favorable conditions than others at the mine and against a rule of the employer, therefore, he should not be denied benefits.

The evidence is insufficient to support the finding that the appellant left work voluntarily without good cause.

The award of the board is reversed.

NOTE.—Reported in 96 N. E. 2d 674.