291 P.2d 279

Claim of Foster S. WOLFGRAM, for Employment Security Benefits, Claimant-Appellant,

v.

EMPLOYMENT SECURITY AGENCY, State of Idaho, Respondent.

No. 8311.

Supreme Court of Idaho.

Dec. 20, 1955.

Walter M. Oros, Boise, for appellant.

Robert E. Brown, Kellogg, for employer.

Graydon W. Smith, Atty. Gen., John W. Gunn, Asst. Atty. Gen., for respondent.

KEETON, Justice.

### History of the Case

On February 10, 1953, claimant made an initial claim for unemployment benefits pursuant to the Employment Security Law, I.C. § 72-1301 et seq. Immediately prior to making the claim, he had been employed by the Day Mines, Inc., as a cager and motorman. He had been laid off on account of plant curtailment. His claim was allowed and he was paid unemployment benefits from February 17, to March 21, 1953. On March 23 he was referred by the Employment Security Agency to the Federal Mining & Smelting Co. for underground work. He reported March 27 to the employment office of the company to which he was referred and was offered a job underground in the Morning Mine as a mucker or miner. He was advised that he would not be hired as a cager or motorman. Where one is hired as a miner the work could consist of other work such as timbering, caging or motoring, or sundry duties in or about the mine. Claimant refused the offer of employment saying that he had been bothered with a heat rash when he worked in the Morning Mine in 1947. Because of appellant's refusal of the job, the

Claims Examiner for the Agency disallowed further unemployemnt benefits. On April 1, 1953, claimant applied to the Agency for a redetermination, giving his reasons for refusing employment:

"I do not accept employment at the Morning Mine, because the type of work which I do was not offered. And I cannot work in the Morning Mine, because I get the heat rash very bad, and it lasts for months after I leave the Morning. It happened two times."

Under date of April 21, 1953, claimant appealed to the Employment Security Agency. Hearing was held May 12 at Wallace and the Appeals Examiner affirmed the determination of the Claims Examiner and denied benefits to claimant on the ground that he had, without good cause, refused an offer of suitable work. On May 29, 1953, claimant filed a Claim for Review by the Industrial Accident Board and gave as his reasons for refusing work:

"I refused work in the Morning Mine as miner or mucker, which was all that was offered, because I get the heat rash in the Morning Mine.

"The benefits I was getting did not come from employment as miner or mucker, but as cager and motorman, and I do not have to accept mining or mucking anyway."

The Board held a hearing October 23, 1953, and sustained the ruling of the Appeals Examiner. Appeal was taken to the Supreme Court and by a decision reported in 75 Idaho 389, 272 P.2d 699, the order of the Board was reversed, and the cause remanded for further hearing. Further hearing was had, additional evidence introduced and on March 1, 1955, the Board again affirmed the ruling of the Appeals Examiner. Appeal was perfected to this Court.

Evidence and Conclusions

The evidence disclosed that claimant had been employed as a cager by Day Mines, Inc. from November, 1952, to February 7, 1953. From 1939 he had been mostly employed as an underground worker—a mucker, miner, timberman, cager, motorman and station attendant. He worked in the Morning Mine from 1939 to 1941. About the beginning of World War II (1941) he worked in the South Pacific Islands and while there he worked underground for about two years. After he returned to the United States he worked in the Morning Mine from January, 1947, to March 22, 1947, as a mucker. He quit this job without assigning any reason, but in this proceeding he testified it was due to contracting a heat rash in the Morning Mine. The testimony discloses that on one occasion the medication prescribed for him was zinc oxide for rash on his left lower arm. He also treated his ailment with rubbing alcohol. While working in the South Pacific he also developed heat rash. He did not stop work because of the ailment.

Claimant testified while he worked as a mucker in the Morning Mine he had trouble only while working on the lower levels;

that when he worked on the upper levels he was not bothered, and the heat rash cleared up in about a week after he left work in the Morning Mine.

Witness Pastir, called by claimant, testified that claimant while working in the Morning Mine had a heat rash, that he (witness) did not contract it, but some of the other miners did.

Witness Andy Wolf testified he was a co-employee in the Morning Mine, working as a miner, and "he (referring to claimant) did have the timber itch, or rash, or whatever they call it, at the time" and that the witness had seen others so bothered, and had been affected himself at different times, and testified that the ailment was a nuisance.

A medical expert testified that the malady as described to him, was, in his opinion, a dermatitis due to something present in the Morning Mine (lower levels), or a physical allergy due to the temperature, or a mixture of both; that it was not possible to determine the exact cause. There was no testimony that the heat rash ever disabled anyone from work, and although it was at times annoying there is no record that claimant ever made application under the Workmen's Compensation Act for occupational disease compensation because of heat rash.

On the record the Board found:

"Appellant was probably suffering a type of dermatitis, which cannot on the record be differentially diagnosed. That the malady was of a minor degree

is evidence from the fact that appellant himself never felt under the necessity of seeking continued medical treatment. The effect of his malady was not disabling, although it was a discomforting nuisance to him as to others who still continued to work. Appellant on his own testimony did not have a severe case of dermatitis."

The question presented for determination is whether suitable work was offered claimant, which he refused, and under the provisions of Sec. 72–1366, I.C., he became, because of such refusal, disqualified for benefits subsequent to the time employment was offered him. Sec. 72–1366, Subd. (i) reads:

"In determining for the purposes of this act, whether or not work is suitable for an individual, the degree of risk involved to his health, safety, morals, his physical fitness, experience, training, past earnings, length of unemployment and prospects for obtaining local employment in his customary occupation, the distance of the work from his residence, and other pertinent facts shall be considered. * * *"

Claimant's customary occupation was work connected with the mining industry— miner, mucker or other duties incidental thereto.

When offered work he asked for an assignment to caging or underground motorman, or work in some other mine. Thus he restricted his availability for work in a

field to which he had been customarily employed.

He at no time, except on the one occasion above mentioned, was treated by a doctor, nor did he, prior to the hearing before the Board, make complaint to the employer relative to this claimed physical ailment.

As a conclusion the Board ruled that claimant had failed to meet the burden that the job offered to him, on or about March 27, 1953, involved conditions injurious to his health.

An examination of the record fails to disclose with any reasonable certainty what conditions caused the heat rash. Whether claimant would be affected in 1953 as he claimes he was in 1947, if he accepted the employment, cannot be determined. Nor is there any showing that he would have been required to work in the area of the mine which he claims caused the ailment.

■■ While an employee does not render himself ineligible for security benefits by refusing employment in suitable work injurious to his health, Sec. 72–1366, Subd. (i), I.C.; Fannon v. Federal Cartridge Co., 219 Minn. 306, 18 N.W.2d 249, 158 A.L.R. 389; Sledzianowski v. Unemployment Comp. Board, 168 Pa.Super. 37, 76 A.2d 666; Evans v. Enoco Collieries, 120 Ind. App. 708, 96 N.E.2d 674, there is no sufficient showing that the employment offered would so injure him.

Except that he was to be employed as a mucker, claimant did not know what his actual duties would be or in what part of the mine he would be employed. He made no investigation of the particular job offered, and based his refusal to accept the employment on the ground that working in the Morning Mine on the lower levels several years before had caused him to suffer heat rash. Whether the conditions in the Morning Mine would have the same effect on him as in 1947 we do not know.

In Richardson v. Administrator, La.App., 28 So.2d 88, compensation benefits were denied where the claimant was offered employment under conditions not on a par with those in his former employment and where the wages were less, and without any investigation he had disqualified himself for unemployment benefits.

■ When a claimant refuses an offered job because of a fear that such job would be detrimental to his health, without further investigation, or inquiry, he is deemed ineligible for benefits, unless he first gives the offered job a fair trial. Suska v. Unemployment Compensation Board of Review, 166 Pa.Super. 293, 70 A.2d 397; In re Filchock Unemployment Compensation Case, 164 Pa.Super. 43, 63 A.2d 355.

The work here offered claimant was not inconsistent with his established employment standard; further the record is purely conjectural that the employment offered involved any risk to claimant's health or safety.

■ In determining the condition of claimant's health and suitability of the work

offered, and whether such work would be injurious to his health are, in the first instance, questions of fact for compensation authorities, and the finding will not be disturbed on review when supported by substantial, competent evidence. In the present situation claimant failed to sustain the necessary burden of proof to entitle him to unemployment benefits. The order is affirmed.

TAYLOR, C. J., and ANDERSON and SMITH, JJ., concur.

PORTER, J., dissents.