DETROIT GRAVURE CORPORATION v. EMPLOYMENT
SECURITY COMMISSION.

1. Unemployment Compensation—Disqualification for Benefits
—Misconduct Connected with Work—Refusal to Work on Sun-
day.

Finding of referee and employment security commission appeal
board that porter's refusal to work on Sunday, and his dis-
charge from employment because of such refusal, did not dis-
qualify him from receiving unemployment compensation benefits
because of statutory "misconduct connected with his work",
affirmed by circuit court on certiorari, is not disturbed under
record presented (CLS 1956, § 421.29).

2. Costs—Unemployment Compensation—Refusal to Work Sun-
days.

No costs are allowed in proceeding to review an award of un-
employment benefits to an employee who had been discharged
for refusal to work on Sundays (CLS 1956, § 421.29).

Carr, C. J., and Kelly and Otis M. Smith, JJ., dissenting.

Appeal from Wayne; Bowles (George E.), J.
Submitted January 12, 1962. (Docket No. 81, Cal-
endar No. 49,090.) Decided May 18, 1962. Rehear-
ing denied July 2, 1962.

Certiorari by Detroit Gravure Corporation, a
Michigan corporation, against Michigan Employ-

References for Points in Headnotes

[1] 48 Am Jur, Social Security, Unemployment Insurance, and Re-
tirement Funds §§ 35, 38.
What amounts to "misconduct" which precludes benefits under
unemployment compensation act to discharge employees. 146
ALR 243.

[2] 14 Am Jur, Costs § 106.
Constitutionality, construction, application, and effect of provisions
of workmen's compensation acts in relation to costs or expenses
on appeal or review. 79 ALR 678.

ment Security Commission, its Appeal Board, and Leon C. Curry challenging award of unemployment compensation to the latter following his refusal to do Sunday work. Judgment affirming award. Plaintiff appeals. Affirmed.

*Marco & Marco,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Joseph B. Bilitzke,* Solicitor General, and *Arthur W. Brown,* Assistant Attorney General, for defendant commission.

*Lipton & Papista (William Lipton,* of counsel), for defendant Curry.

Black, J. This is an unemployment compensation case. The referee held that claimant Curry was not disqualified "for misconduct connected with his work" within pertinent meaning of section 29 of the employment security act (CLS 1956, § 421.29 [Stat Ann 1960 Rev § 17.531]). Benefits were ordered accordingly. The referee was upheld by the appeal board, without opinion. On certiorari to the Wayne circuit Judge Bowles affirmed the appeal board's decision. The employer appeals.

The agreeably stated question (copied from the attorney general's brief) is:

"Was the discharge of the defendant and appellee Leon C. Curry from his employment with the Detroit Gravure Corporation because of his refusal to work his regularly scheduled shift on Sundays a discharge for misconduct connected with his work within the meaning of section 29 (1) (a) (2) of the Michigan employment security act so as to disqualify him for unemployment compensation benefits under said act for the duration of his unemployment?"

The referee found that Mr. Curry was hired by appellant in January of 1957 to be the "porter in the pressroom"; that the job required Mr. Curry to work 7 days per week, "as cleaning of the floor around the presses must be done on Saturdays and Sundays, when the presses are not in operation"; that the regular work week of other employees was 5 days; that Mr. Curry was paid overtime for working Saturdays and Sundays; that during the fore part of 1960 Mr. Curry went to his superintendent saying he "wanted some Sundays off, to go to his church"; that he proposed to the superintendent that he clean around the presses on one side thereof, on one Saturday, and do the other side on the next Saturday, and so on; that the superintendent did not give him "a decisive answer"; that on February 6, 1960, while Mr. Curry was at work, the superintendent told him "to be in the next day, Sunday, and claimant said he would not be in, that he was not going to work Sundays any more;" and that Mr. Curry thereupon was dismissed for what appellant claims is disqualifying misconduct.

Decision is controlled by the reasoning and authority appearing in the dissenting and later elevated (*Linski* v. *Employment Security Commission,* 358 Mich 239) opinion of *Cassar* v. *Employment Security Commission,* 343 Mich 380. If Mr. Curry's conduct justified his discharge (a question not before us), the referee nonetheless had a right to find that such did not amount to "misconduct connected with his work." Mr. Curry, not having wantonly or wilfully disregarded his employee's interest, did not risk a matter-of-law judgment that his conduct aforesaid constituted statutory "misconduct" and it matters not that the appeal board might—we say "might"—have concluded that such conduct did *in fact* constitute such "misconduct."

Some day, hopefully before we meet in the sweet bye and bye according to the old hymn, all lawyers and judges—and possibly all others who work themselves into a pluperfect tizzy every time this Court divides on the decisional rock of an unemployment compensation case—will have learned that administrative decisions have to be left to the broad discretion of appointed administrators and that the courts may interfere and reverse only when it is found judicially that some controlling rule of law quite unfounds what such administrators have done. See discussion starting on page 629 (separate opinion for affirmance) of the report of *Peaden* v. *Employment Security Commission,* 355 Mich 613. Which is to say again that our circuit judges should not, nor should we in turn, hear and decide unemployment benefit cases *de novo.*

In this case of Curry, as in all like section 29 cases, the commission has exercised its judgment within the statutory area of discretion entrusted to it. Once the circuit judge, reviewing on certiorari, reaches such conclusion, his function ends and affirmance is in order. So it is here, on review, once we reach the same conclusion.

Judge Bowles, writing to affirm the appeal board, applied to the facts the following quotation which, in *Cassar* aforesaid at page 405, was adopted by Mr. Justice CARR from the text of American Jurisprudence:

"Misconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show

an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer."*

We agree with the conclusion of the judge that such quotation is applicably pertinent, and therefore affirm. No costs.

Kavanagh, Souris, and Adams, JJ., concurred with Black, J.

Dethmers, J., concurred in result.

Carr, C. J. (*dissenting*). This proceeding was instituted by appellee Leon C. Curry to obtain unemployment compensation under the provisions of the statute pertaining thereto.† The facts are not materially in dispute. For some years past appellant Detroit Gravure Corporation has conducted its business in the city of Detroit. In January, 1957, Curry was hired to work as a porter. The employment included the cleaning of the floors in the pressroom on Saturdays and Sundays when the presses were not in operation. The ordinary work week for appellant's employees was 5 days, and Curry was paid overtime for working Saturdays and Sundays which, apparently, he did for a period of over 3 years.

In the early part of 1960 Curry advised his employer through its representatives that he did not wish to work on Sunday, or at least that he wanted some Sundays off. He carried his insistence to the point of refusing to work on Sunday, and was informed that if he refused to perform the labor that he was especially hired to do it would be necessary to replace him. This conversation occurred on Sat-

---

* 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds, § 38, pp 541, 542.

† PA 1936 (Ex Sess), No 1, as amended (CL 1948, § 421.1 *et seq.*, as amended [Stat Ann 1960 Rev §17.501 *et seq.*]).

urday, February 6, 1960. Curry turned over his keys and in accordance with the instructions given him returned on the following Monday to receive his paycheck. It does not appear from the record before us that he at any time indicated his willingness to continue with the work that he had been doing pursuant to the agreement of the parties.

On February 9, 1960, Curry filed a claim for unemployment compensation with the Michigan employment security commission. Such claim was given consideration and was denied on the ground that he was disqualified under the provisions of section 29 (1) (a) (2) of the employment security act. In other words, the disqualification was based on the conclusion of the commission that Curry was disqualified for misconduct connected with his work. The specific provision of section 29 of the act (CLS 1956, § 421.29, Stat Ann 1960 Rev § 17.531) here involved reads as follows:

"(1) An individual shall be disqualified for benefits:

"(a) For the duration of his unemployment in all cases where the individual has: (1) Left his work voluntarily without good cause attributable to the employer or employing unit, or (2) has been discharged for misconduct connected with his work."

On redetermination pursuant to petition filed therefor the commission adhered to its original ruling. Curry then applied for hearing before a referee, which was duly held. On such hearing neither employee nor employer was represented by counsel. In response to questions from the referee Curry indicated that his sole reason for refusing to continue to work regularly on Sunday was because he wished to attend church during the daytime on said day rather than in the evening. He stated that when working he was not through until 4:30, and that when

he attended church in the evening he went to sleep. He did not challenge the claim advanced on behalf of the employer that the operation of the business required that the pressroom be cleaned on Saturdays and Sundays when the presses were not in operation. Neither did he advance any claim that the work was in any way prejudicial to his health, or that his action in refusing to continue working as he had been doing under the arrangement made when he was hired was due to any religious scruples on his part.

The referee came to the conclusion that Curry was not guilty of misconduct within the meaning of the statute and was, in consequence, not precluded from receiving unemployment compensation. In stating his conclusions the referee cited *Swenson* v. *Employment Security Commission,* 340 Mich 430, in which was involved the status of certain employees who were Seventh Day Adventists and who declined for that reason to work on Saturday. He also referred to a statement of policy issued by the commission with reference to work on the Sabbath day by employees who had religious scruples against such employment. However, no question is involved in this case with reference to any scruples on Curry's part against working on Sunday. His sole reason for refusing to do so had reference to his desire to attend church during the daytime on Sunday rather than in the evening. He knew that the operation of his employer's plant reasonably required the cleaning of the pressroom on Saturday and Sunday; and he also knew that if he refused to work on the latter day that the company would be forced to replace him. Nonetheless he persisted in his refusal, thus in effect forcing his discharge. The question at issue is whether under the circumstances presented he was guilty of misconduct in connection with his employment, barring any claim for unemployment compensation. Is refusal on the part of an employee to con-

tinue to perform the work for which he has been hired, and which did not injuriously affect his health, misconduct in connection with that work?

The employment security appeal board upheld the decision of the referee without discussing the proofs or the legal question at issue. On review by certiorari the circuit court of Wayne county affirmed the holding of the appeal board. The case comes before this Court on appeal by the employer from the order entered by the circuit judge hearing the matter.

The persistence manifested by Curry in his refusal to continue the work that he had been hired to do, with knowledge on his part that he would be replaced, indicates that he was not particularly averse to being discharged from his employment. The promptness with which he filed application for unemployment compensation is also significant. It does not appear, nor is there any claim made in his behalf, that he sought employment elsewhere or that he could not have obtained other employment had he made an effort to do so. The employment security fund was created for a specific purpose as declared by the legislature in the enactment of the statute. Section 2 thereof (CL 1948, § 421.2 [Stat Ann 1960 Rev § 17.502]) states that:

"The systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment by the setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own, thus maintaining purchasing power and limiting the serious social consequences of relief assistance, is for the public good, and the general welfare of the people of this State."

The provisions of the statute must be construed in the light of the purpose for which it was enacted. In the case at bar may it be said that Curry's unemploy-

ment following his discharge was without fault on his part? Obviously he acted, in refusing to work as required by his contract, in total disregard of the interests of his employer, well knowing what the result must be. His course of conduct was deliberately conceived. If he found the work monotonous it was his privilege to quit, but instead of doing that he persisted in his refusal to do his work thus leaving the employer no alternative other than to discharge him.

In our opinion in *Cassar* v. *Employment Security Commission,* 343 Mich 380, 405, in considering the scope of the term "misconduct" as used in the statute before us, we cited the following statement from 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds, § 38 pp 541, 542:

" 'Misconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.' "

We think the instant case furnishes an illustration of a deliberate violation of the rules of the employer, a disregard of the behavior which the employer had the right to expect, an intentional and substantial disregard of the employer's interest and, likewise, a disregard of the employee's duties and obligations to the employer.

In *Bell* v. *Employment Security Commission,* 359 Mich 649, this Court held that an employee who was so unmindful of his duties and obligations to his employer as to permit himself to sleep or doze while

employed as a fireman was guilty of misconduct barring his right to unemployment compensation following his discharge.

In *Carter* v. *Employment Security Commission,* 364 Mich 538, it was held that the refusal of an employee to carry out a reasonable order of his foreman, accompanied by insolent conduct, was misconduct within the meaning of the statute, and accordingly unemployment compensation was denied. The decision was based on the conclusion that the employee's conduct was in disregard of the employer's interest and a deliberate violation of the standards of behavior which the employer had the right to expect of the employee. In *Cassar* v. *Employment Security Commission, supra,* and in *Linski* v. *Employment Security Commission,* 358 Mich 239, claimed labor disputes were involved. It may be noted that the majority opinion in the *Linski Case* was based on the proposition that the specific labor dispute disqualification set forth in section 29 of the Michigan employment security act, above cited, was applicable rather than the misconduct provision involved in the instant case. Neither of said decisions may be regarded as in point in the instant controversy.

The unemployment compensation statute of the State of Pennsylvania contains a provision, analogous to that in the Michigan act, disqualifying for misconduct the payment of benefits to one unemployed. In *Detterer Unemployment Compensation Case,* 168 Pa Super 291 (77 A2d 886), compensation was denied on the ground that the employee, being dissatisfied with his work, repeatedly complained and had stated in effect that he had brought about his own discharge. On occasions he had failed to comply with the instructions of his foreman. The court concluded that the actions of the employee were deliberate and showed such disregard of the

standards of behavior which the employer had the right to expect as to constitute wilful misconduct.

In *Massengale* v. *Review Board of the Indiana Employment Security Division,* 120 Ind App 604 (94 NE 2d 673), the employee concerned became dissatisfied because he was not given overtime work and indicated to other employees that he would refuse to do overtime work, if requested, in order to inconvenience his employer and avenge the discrimination from which he claimed to have suffered. He carried out such expressed intention and when his supervisor needed someone to work overtime the employee refused though he apparently had no excuse for so doing. He later learned that his refusal had not accomplished his purpose in that the supervisor had found another employee who was willing to take on the special assignment. This led to his becoming angry and arguing with his supervisor, as a result of which he was discharged. The defendant board concluded that the employee was guilty of misconduct in endeavoring "to precipitate a situation which would be detrimental to his employer's interest." The court (p 609) agreed with the defendant board that such actions amounted to misconduct in connection with the employee's work and justified denial of unemployment compensation.

A situation analogous to that in the case at bar was involved in *Johns* v. *S. H. Kress & Company,* 78 Idaho 544 (307 P2d 217). In that case the compensation claimant was discharged for refusing to work on Monday, December 26, 1955, which by gubernatorial proclamation had been designated a holiday. Prior to that date the employees, including the claimant, had been advised that they would be required to work on the day after Christmas. Such requirement was in accord with the policy of the employer that had been observed for many years. It appears that the preceding year claimant had worked on Sunday,

December 26th.   Claimant did not report for work
on the day in question.   Apparently other employees
who did so were paid double time and given an extra
hour.   The necessity for working was because of the
requirement that an inventory had to be prepared
by December 31st and other changes in operation
duly made.   Apparently the action of the claimant
was wilful.   Misconduct in connection with the em-
ployment was a basis under the Idaho statute for
denial of unemployment compensation.   The ques-
tion presented was whether the refusal of the claim-
ant to work as requested by the employer was mis-
conduct within the meaning of said statute.   In re-
versing the order of the industrial accident board of
the State allowing compensation, the court said, in
part (pp 547, 548):

"The act is social legislation, designed to alleviate
economic insecurity and to relieve hardships result-
ing from involuntary unemployment; to encourage
employers to provide more stable employment.   The
act does not cover those who are unemployed result-
ing from their own fault.   The act was clearly intend-
ed to provide benefits for those unemployed under
prescribed conditions who are able and willing to
work, but unable to secure suitable employment on
the labor market.

"Where one has suitable employment and refuses
to work under reasonable regulations and condi-
tions, and pursuant to reasonable directives of man-
agement, such person is not within the terms of the
act, allowing benefits.

"A directive of the management to work the day
after Christmas, which fell on a Monday, even
though it was by gubernatorial proclamation de-
clared a holiday was neither arbitrary nor unreason-
able, and was in accord with the proof and with well-
recognized business practice in the community.   The
necessity for working on that day was shown to exist
and was pursuant to a long-established policy with

which the claimant was familiar. Her excuse for not appearing for work, that she did not believe in working on holidays, or that she wanted to stay home and cook dinner for her grandmother, was in effect a positive, arbitrary refusal to comply with the terms of the contract of employment.

"While the term 'discharged for misconduct' as used in section 72-1366(f), Idaho Code, has been variously defined, we think the term should be interpreted as meaning wilful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees.

"The discharge of an employee for intentional, wilful misconduct deprives him of the right to unemployment compensation.

"In the situation before us, claimant was advised by her fellow employees that if she refused to work she would be discharged, and she stated in substance that at any rate she would be entitled to unemployment benefits.

"Upholding such a claim as is here made would not serve the purpose for which the fund is created."

The language of the Idaho court in the case above cited may well be applied to the situation in the case at bar. Other decisions from States having employment security statutes similar to that of Michigan have been cited and discussed in prior cases and, while each such case has been determined on the basis of the express language of the statute and of the facts involved, we think it may fairly be said that the term "misconduct" as used in the various statutes has been given its generally accepted meaning. Generally speaking, there appears to be agreement with the statement of the Idaho court that the term implies an intentional disregard of the interests of the employer, a deliberate violation of the rules that the employee should respect, and a disregard of

a standard of behavior consistent with the duties and obligations incident to the relationship of employer and employee.

We think the employment security commission was right in its holding that Curry indulged in conduct constituting "misconduct" within the meaning of the Michigan act. Certainly he evinced no interest in the business of his employer and conducted himself in a manner inconsistent with the obligations that he owed to the appellant. It does not appear that he had any complaint whatever as to the manner in which he had been treated during the 3-year period that he had worked in appellant's establishment. The record indicates that at first he appreciated the opportunity to earn overtime pay by working Saturdays and Sundays. As before noted, he made no attempt, so far as this record shows, to find other suitable employment if he did not wish to continue with appellant. We call attention in this respect to the comments of this Court in *Bolles* v. *Employment Security Commission,* 361 Mich 378, 386, emphasis being there placed on the fact that the employees seeking unemployment compensation had sought employment elsewhere and were anxious to continue work in industry. The record here does not suggest that such an attitude existed on the part of appellee Curry. We are unable to agree with the conclusion of the circuit judge that Curry should be permitted to receive an award payable from the fund created for the benefit of persons attached to the labor market who are out of employment "through no fault of their own."

An order should enter reversing and setting aside the order entered in circuit court and remanding the case with directions to set aside the award of com-

pensation. The interpretation and application of a statute being involved, no costs should be allowed.

Kelly and Otis M. Smith, JJ., concurred with Carr, C. J.