379 P.2d 797

Owen J. RAMSEY, Claimant for Employment Security Benefits, Respondent,

v.

EMPLOYMENT SECURITY AGENCY, State of Idaho, Defendant-Appellant.

No. 9166.

Supreme Court of Idaho.

March 14, 1963.

John W. Gunn, Counsel, Employment Security Agency, Boise, for appellant.

Richard Rosenberry, Caldwell, for respondent.

KNUDSON, Chief Justice.

During the period from 1955 to March 15, 1961, claimant-respondent was employed by the Nampa State School (hereinafter referred to as the school) as a painter and maintenance man. By letter dated March 15, 1961, claimant was notified that his employment was being terminated as of April 13, 1961, by reason of acts of insubordination. Claimant thereafter regularly filed his claim for benefits with the Employment Security Agency. The claims examiner and appeals examiner found that claimant had been discharged for misconduct in connection with his employment and therefore was not eligible for employment security benefits.

Upon appeal the Industrial Accident Board, by order dated March 2, 1962, reversed the decision of the appeals examiner, and allowed compensation. This appeal is from said order.

The first indication in the record of any failure on the part of claimant to follow instructions and regulations of his employer is a communication addressed to claimant entitled "Interdepartmental Memorandum" dated July 30, 1958, from Paul E. Stearns, M.D., the then superintendent of the school, which reads as follows:

"Dr. Butler informed me that you called at his office to discuss matters on which you felt there was dissatisfaction or criticism.

"The procedure for lodging complaints or criticisms was outlined in memorandum No. 23 under date of 31 March 1958. Since no attempt was made to speak with me or, so far as I can learn, with none of my subordinates, your action represented a disobedience of written instructions.

"Please in the future, follow established procedure."

Memorandum No. 23 referred to in said communication was not offered in evidence and the provisions thereof do not appear in the record.

The next communication received by claimant relating to the issue here involved was entitled "BASIC PRINCIPLES AND NAMPA STATE SCHOOL REGULATIONS (An Open Letter From the Superintendent)" identified as Memorandum No. 36, dated July 28, 1959, bearing the signa-

ture of the then superintendent, S. S. Hum-sey, M.D., a pertinent portion of which is:

"(5) *GRIEVANCES, IF ANY:* Any employee who has a grievance has the right to be heard. It is suggested that he discuss any difficulties *first with his immediate supervisor.*"

Under date of March 2, 1961, the then superintendent, Erwin C. Sage, M.D., is-sued. a memorandum, addressed to all em-ployees of the school in which the "Em-ployees Policy and Functions Manual" is referred to and attention is therein called to a directive issued by the administrator of health, dated September 23, 1958, the perti-nent portion of which directive is:

"Effective immediately all relation-ships between members of the Depart-ment of Health and the Attorney Gen-eral's office shall be arranged through the office of the Administrator of Health."

The record does not disclose that claimant had any knowledge or notice of the provi-sions of the "Employees Policy and Func-tions Manual" or the directive of Septem-ber 23, 1958, pertaining to contacts between members of the Department of Health and the Attorney General's office, prior to claimant's receipt of the communication of March 2, 1961. Said communication closed with the following paragraph:

"I am sure some of you have forgotten or are not aware of the above policy

statements. You are now being re-minded of the fact these policies are in existence. In order to clarify any sit-uation which has existed relative to these policies, I intend to give anyone who has unknowingly violated them an opportunity to clear himself or herself of the possibility of punishment. I am therefore requesting that any of you who failed to observe the above policies come immediately to my office and give me a complete and full state-ment of the occurrences. Anyone who fails to do this and who is found to have violated this policy will immedi-ately be considered guilty of insubordi-nation and will be subject to immediate dismissal."

█ It is uncontradicted that promptly after receiving said memorandum of March 2, 1961, claimant went to the office of the superintendent, Erwin C. Sage, and dis-closed to him that claimant had, during the administration of Dr. Sage's predecessors, contacted the Attorney General's office on six occasions. The superintendent request-ed that claimant give him a letter setting forth the matters which he had discussed with the Attorney General on the occasions referred to. Pursuant to such request, claimant prepared and delivered to the su-perintendent a letter, dated March 12, 1961, the contents of which are as follows:

"In the past I have been asked, by the union, to contact the Attorney Gen-

erals office and ask his opinion on the following,

"1. The legality of a State employee selling property to the State.

"2. Interpretation of the nepotism law.

"3. How to get impartial treatment under the Merit System.

"4. Where to get compensation for an employee who had contracted lead poisoning.

"5. What could be done to enforce State Safety Laws at the institution.

"6. How could the employees get the eight holidays that were declared legal holidays by the State Legislature.

"I believe Dr. Carver is already aware of most of the above items. I will be glad to discuss the above with you at any time."

Thereafter, and by letter dated March 15, 1961, superintendent Sage notified claimant that his employment at the school was thereby terminated effective April 13, 1961. In said letter the superintendent stated, inter alia, that claimant "violated the provision of Chapter 1, 'Channels of Contact, Employees Policies and Function Guide of the State of Idaho, Department of Health, and the Code of Ethics for Idaho State Department of Health Employees', found on page 24 of Employees Policies and Function Manual." Neither the said manual nor chapter 1 thereof was offered or admitted in evidence, nor does the record disclose the terms or provisions thereof. Likewise, the record does not contain a showing that claimant had knowledge of any of such provisions or that he violated any of them.

Under appellant's specifications of error it is contended that the evidence does not support the board's ultimate findings and rulings that (1) there was no competent evidence that claimant was guilty of insubordination or that claimant wilfully disregarded or violated any rule or regulation of this employer; (2) that claimant's employer discharged him without just cause; and (3) that the record does not support a finding of misconduct by claimant.

The germane issue here presented is whether or not claimant was, by reason of having contacted the Attorney General, guilty of misconduct in connection with his employment so as to render him ineligible under I.C. § 72–1366 for employment security benefits.

I.C. § 72–1366 provides in part as follows:

*"Personal eligibility conditions.*—The personal eligibility conditions of a benefit claimant are that—

"(f) His unemployment is not due to the fact that he left his employment voluntarily without good cause, or that

he was discharged for misconduct in connection with his employment; * * *."

This Court has stated its position regarding the meaning of misconduct as used in the foregoing quoted statute. In Johns v. S. H. Kress and Co., 78 Idaho 544, 307 P. 2d 217, the Court stated:

"While the term 'discharged for misconduct' as used in Sec. 72–1366(f), I.C. has been variously defined, we think the term should be interpreted as meaning wilful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees."

See. also, Watts v. Employment Security Agency, 80 Idaho 529, 335 P.2d 533; Mandes v. Employment Sec. Agency, 74 Idaho 23, 255 P.2d 1049.

In addition to having and considering a transcript of the proceedings had before the appeals examiner the board received oral and documentary evidence. Claimant was the only witness who was sworn and testified at the hearing before the appeals examiner and claimant, together with a witness called by him, were the only witnesses who testified before the board. No testimony was offered or admitted on behalf of appellant or the employer.

The evidence discloses that during the period from January, 1958, to the date of his discharge claimant was President of a local, State, County and Municipal Employees Union, and during the latter part of that time he was also President of the State Council of such union. Claimant testified, without contradiction, that each of the contacts he had made with the Attorney General took place during off duty hours; that each was made in his capacity as President of said union and at the request of union members or other employees. Such testimony was corroborated by the only other witness who testified. None of such contacts was arranged through or with the consent of claimant's superiors.

In further explanation of why he consulted the Attorney General claimant testified that. "Our union is small and young and we didn't have a lot of money to put out for attorney fees. That's why I went to him, being a State official, it's his job to interpret those things and one thing and another, and he was the proper person to go to get an opinion on these things." Claimant specifically denied that he was taking his grievance to the Attorney General. He also testified in substance that if he had consulted the Attorney General at any time during which he was supposed to be on the job he would consider it a violation of rules, but since it was done on his own time he did not feel that it was a violation. In this connection attention is called to Mem-

orandum No. 36, hereinbefore referred to, a portion of which is as follows:

"(8) *ATTENTION*—Only 8 hours of the 24: Employees should willingly avoid being distracted from their duties during the 8 hours they work here. They should also stay on the ward or wherever they work and not wander into other parts of the school without the special permission of the head of their department. What they do when they are *off* Nampa State School *grounds* is entirely up to them; it is their inalienable right as *law-abiding* U. S. citizens. Their personal life will cause neither favoritism nor discrimination *as long as their work here is satisfactory.* Their visiting together or other social activities are fine as long as they are not done on 'state time' and at the expense of sick people who need our honest work every day."

As concerns claimant's rating while employed at the school, he testified as follows:

"Q. During the performance of your duties there, what was the nature of your rating during the period of six years that you were employed there?

"A. You mean my rating on my work?

"Q. Yes.

"A. Well they didn't, up until the Merit System came in, I don't believe

they had ratings, but after that they had an evaluation sheet once a year and the first time that came out, I was standard, and from then on I was standard plus. I don't believe there has ever been any complaint about my work over there—so far as I know, there hasn't been, anyway."

There is no contradiction of this testimony.

We consider it unnecessary to further quote from the evidence. The record is devoid of competent evidence that claimant used the office of the Attorney General for the purpose of lodging complaints or grievances relative to his employer or any of the administrative personnel of the school. Claimant testified fully regarding his activities and in the final analysis it was for the board to decide the credit and weight to be given the testimony admitted. In re MacKenzie, 54 Idaho 481, 33 P.2d 113; Benson v. Jarvis, 64 Idaho 107, 127 P.2d 784; Nitkey v. Bunker Hill & Sullivan Mining & Concentrating Co., 73 Idaho 294, 251 P.2d 216.

The board found that the memorandum from the superintendent dated March 2, 1961, constituted an offer of amnesty to all employees who had unknowingly violated policies or directives of the school and who reported such violations to the superintendent immediately; that claimant complied with such memorandum and in good faith made a complete disclosure of his previous

**402**

contacts with the Attorney General's office during prior administrations of the school; that there is no competent evidence that claimant was guilty of insubordination or that he wilfully disregarded or violated any rule or regulation of the employer involved.

 The following principles of law are well settled in this jurisdiction, namely: Questions of fact, such as are here involved, are in the first instance for the board to decide, and its findings will not be disturbed on review when supported by substantial, competent evidence. (Wolfgram v. Employment Security Agency, 77 Idaho 298, 291 P.2d 279; Turner v. Boise Lodge No. 310, Etc., 77 Idaho 465, 295 P.2d 256; Watts v. Employment Security Agency, supra.) The board's findings of fact, supported by competent, substantial evidence, are conclusive upon appeal to the Supreme Court, such Court's jurisdiction being limited to review of questions of law only. Stroscheim v. Shay, 63 Idaho 360, 120 P.2d 267; Townsend v. Cahoon Const. Co., 80 Idaho 425, 332 P.2d 880; Idaho Constitution, Art. 5, § 9; I.C. § 72–609; I.C. § 72–1368.

We are convinced that a trier of the facts would be justified in concluding that claimant's actions here involved as disclosed by the record were not such as could fairly be classed as "misconduct in connection with his employment" as used in I.C. § 72–1366.

The order appealed from is affirmed. Costs to respondent.

McQUADE, McFADDEN, TAYLOR and SMITH, JJ., concur.