Submitted on record and briefs October 21, affirmed
November 18, 1974

WEIRICH, *Petitioner, v.* EMPLOYMENT
DIVISION (No. 74-2310), *Respondent.*

528 P2d 105

Lawrence Arthur Weirich, Portland, pro se.

Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, and Rhidian M. M. Morgan, Assistant Attorney General, Salem, for respondent.

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

SCHWAB, C. J.

Petitioner, appearing pro se as he did below, appeals from an order of the Employment Appeals Board which held he was disqualified under ORS 657.-176 (1)[1] from receiving unemployment benefits be-

---

[1]

"(1) An authorized representative designated by the administrator shall promptly examine each claim to determine whether an individual is subject to disqualification as a result of his separation, termination, leaving, resignation, or disciplinary suspension from work or as a result of the individual's failure to apply for or accept work and shall promptly enter an administrator's decision if required by subsection (3) of ORS 657.265.

"(2) If the authorized representative designated by the administrator finds:

"(a) The individual has been discharged for misconduct connected with his work * * * the individual shall be disqualified from the receipt of benefits * * *.

"* * * * *." ORS 657.176.

cause he was discharged for "misconduct connected with his work." We interpret his assignments of error as raising three basic contentions: (I) the pertinent language in ORS 657.176 (2)(a), "misconduct connected with his work," is void for vagueness; (II) assuming that the statutory language is sufficiently definite, there was no substantial evidence to support the finding of misconduct; and (III) petitioner was denied due process because of certain procedural errors.

# I

■ The phrase "misconduct connected with his work" is a sufficiently definite standard for discharge from employment. As we noted in *Palen v. State Bd. Higher Education,* 18 Or App 442, 525 P2d 1047 (1974), which involved the discharge of a tenured employe:

> " 'The root of the vagueness doctrine is a rough idea of fairness.' *Colten v. Kentucky,* 407 US 104, 110, 92 S Ct 1953, 32 L Ed 2d 584 (1972). The ultimate criterion being fairness, the degree of precision required in statutes and regulations varies somewhat depending upon the context. At one end of the spectrum—where the greatest degree of precision is required—are statutes defining crimes. *See, State v. Hodges,* 254 Or 21, 457 P2d 491 (1969); *City of Portland v. White,* 9 Or App 239, 495 P2d 778, Sup Ct *review denied* (1972). Toward the other end of the spectrum are, for example, statutes defining the relationship between a governmental employer and its employes—statutes that typically articulate a common standard applicable to myriad different employes performing widely disparate tasks." 18 Or App at 446-47.

---

ORS 657.176 further provides in subsection (5) that notwithstanding the above, such an individual under certain conditions shall receive benefits after eight weeks have elapsed.

Statutory language substantially identical to that in the case at bar has been held sufficiently precise in other jurisdictions. *See, Ramsey v. Employment Security Agency,* 85 Idaho 395, 379 P2d 797 (1963); *Rawls v. Brown,* 165 So2d 18 (La 1964); *Detroit Gravure v. Emp. Sec. Comm.,* 366 Mich 530, 115 NW2d 368 (1962); *Schock v. Bd. of Rev., Div. Empl. Sec.,* 89 NJ Super 118, 214 A2d 40 (1965); *aff'd* 48 NJ 121 (1966); *Davis v. Catherwood,* 24 App Div2d 904, 264 NYS2d 140 (1965).

## II

■ The findings and conclusion of the Appeals Board were:

"FINDINGS OF FACT: (1) Claimant was employed by this employer from May 27, 1963 to November 29, 1973 as a checker. (2) During this period of employment, he was a member of the Retail Clerks Union, Local 1092.

"(3) By union agreement employees were prohibited from using uncompensated time to prepare for work prior to the beginning of their shift or to check out their till after the closing of their shift. (4) On at least two occasions, claimant had entered into an argument with a fellow employee regarding closing the checkstand after the end of the shift. (5) These arguments were conducted in the presence of customers. (6) The time involved amounted to four or five minutes after the shift had ended. (7) On November 29, 1973, a fellow employee was in the midst of checking out a customer's groceries when the shift ended. (8) Claimant took it upon himself to call the fellow employee on the office intercom and reprimanded him for not leaving at the exact time the shift ended. (9) Customers overheard this reprimand and overheard claimant calling the fellow employee a crybaby. (10) As a result of this incident the food manager was called in and discharged the claim-

ant. (11) A grievance was filed by the claimant with his union and the action of the employer was upheld.

"CONCLUSION AND REASONS: We agree with the decision of the referee entered in this matter. Claimant was discharged for misconduct in connection with his work.

"Arguing with a fellow employee in the presence of customers over union matters is considered misconduct in connection with the work. Engaging in such arguments is disruptive of the process of the employer and has a tendency to irritate customers. The matters of which claimant was complaining were matters between the union and its members and were not proper matters to argue about while on duty and in the presence of customers. If claimant had any complaints regarding his fellow workers, it would have been more proper for him to abide by the union's by-laws and report alleged violations to the local union. To reprimand fellow employees and to argue these matters in the presence of customers constitutes misconduct within the meaning of ORS 657.176."

There is evidence in the record to support the findings; the findings support the conclusion.

### III

Petitioner's procedural arguments are (1) he was refused permission to review his file before his initial hearing, (2) he was not informed of his right to a transcript of the initial hearing before a referee, and (3) he was not informed of his right to appear and argue before or file a written brief with the Employment Appeals Board when it considered petitioner's claim on the record made before the referee.

(1) Oregon Administrative Rule (OAR) 40-020 (7) provides in pertinent part, "At a reasonable time be-

fore a hearing, on request, a party may examine the claim file * * *." There is nothing in the record before us concerning any such request by petitioner or refusal of such a request if made.

■ (2) Petitioner cites no rule and we find none requiring that he be furnished such a transcript, if in fact he was not furnished with one. In any event, he has it now and assuming that he should have received one prior to the hearing before the Appeals Board he points to no resulting prejudice. Nor can we conceive of any prejudice since he did not appear before the Appeals Board either in person or in writing.

(3) Oregon Administrative Rule (OAR) 41-010 (2) provides that whenever a party files an application for review by the Appeals Board he may at the same time make written request to appear and make oral argument and also to file a written brief. Petitioner cites no rule requiring a special notice to him advising of this right. It is difficult to understand how he ascertained his right to apply for review by the Appeals Board without at the same time becoming aware of his rights under OAR 41-010 (2).

■ Petitioner makes no contention that any of the agency's rules which he cites to us were not properly promulgated. If he chose not to make use of them, absent some overreaching by the agency he cannot now be heard to complain.

Affirmed.