KEITH v CHRYSLER CORPORATION

OPINION OF THE COURT

1. UNEMPLOYMENT COMPENSATION—REFUSAL OF WORK—PERSONAL REASONS.

A person entitled to unemployment compensation is obligated to mitigate his wage-loss damages, and he may not refuse suitable work merely for personal reasons.

DISSENT BY LEVIN, P. J.

2. UNEMPLOYMENT COMPENSATION—EMPLOYEE'S OBLIGATION—LOSS OF BENEFITS.

*A person otherwise entitled to benefits is obligated to mitigate his wage-loss damages, and may lose his right to unemployment benefits if he refuses to report for available suitable work, unless such refusal is for "good cause" (MCLA 421.29).*

3. UNEMPLOYMENT COMPENSATION—"GOOD CAUSE"—PERSONAL REASONS.

*The term "good cause" as used in the Employment Security Act means nothing more than good reason—a substantial reason—for refusing to accept the proffered employment, and a cause personal to the employee can be "good cause" when it would be deemed by reasonable men valid and not indicative of an unwillingness to work (MCLA 421.29).*

4. UNEMPLOYMENT COMPENSATION—GOOD CAUSE.

*An employee has good cause for rejecting a proffered job where it*

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 35.

Refusal of type of work other than that in which employee was formerly engaged as affecting right to unemployment compensation, 97 ALR2d 1125.

Unemployment compensation: Eligibility as affected by claimant's refusal to work at particular times or on particular shifts, 35 ALR3d 1129.

[5] 20 Am Jur 2d, Courts §§ 184, 189, 200–202.

*effectively bars the employee from returning to or accepting a job which he prefers and which he has good reason to believe he can obtain (MCLA 421.29).*

5. Cᴏᴜʀᴛs—Cᴏᴜʀᴛ ᴏꜰ Aᴘᴘᴇᴀʟs—Pʀᴇᴄᴇᴅᴇɴᴛ.

*As a matter of policy, the Michigan Court of Appeals has concluded that one panel is not bound by the decision of another panel and that it is for the Supreme Court to resolve conflicts.*

Appeal from Macomb, Alton H. Noe, J. Submitted Division 2 October 12, 1971, at Detroit. (Docket No. 10879.) Decided July 10, 1972. Leave to appeal granted, 388 Mich 800.

John Keith presented his claim for unemployment compensation against Chrysler Corporation. Benefits denied. Plaintiff appealed to circuit court. Affirmed. Plaintiff appeals. Affirmed.

*Stephen I. Schlossberg, John A. Fillion, Jordan Rossen, Bernard F. Ashe,* and *Stanley Lubin,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *James H. White,* Assistant Attorney General, for defendant commission.

*Clifford L. Johnson,* for defendant employer.

Before: Lᴇᴠɪɴ, P. J., and R. B. Bᴜʀɴs and J. H. Gɪʟʟɪs, JJ.

R. B. Bᴜʀɴs and J. H. Gɪʟʟɪs, JJ. This case is controlled by *Losada v Chrysler Corp,* 24 Mich App 656 (1970), *leave den* 383 Mich 827 (1970).

Affirmed. Costs to appellees.

Lᴇᴠɪɴ, P. J. *(dissenting).* The appellant, John

Keith, was employed as a washer and degreaser machine operator at the Detroit Tank Plant of Chrysler Corporation.[1] The plant is located in Warren, Michigan. Keith resided in that city.

Keith was laid off because of lack of work and was referred by Chrysler to its Hamtramck Assembly Plant for possible employment as an assembler at that plant.[2] He refused to report for an interview.

The Employment Security Appeal Board concluded that Keith was not entitled to unemployment compensation because he had failed without good cause to report for an interview concerning available suitable work. The circuit Court affirmed the appeal board's decision. Keith appeals.

Under the provisions of the collective bargaining agreement between Keith's union and Chrysler, if Keith had gone to work at the Assembly Plant he could not have obtained reemployment at the Tank Plant even if an opening occurred, unless Chrysler had first laid him off from his new employment at the Assembly Plant. Keith testified that he refused to report for possible employment at the Assembly Plant because he did not desire to work as an assembler and because he would not have been able to return to the Tank Plant unless he had been laid off by the Assembly Plant. A few months after he was laid off, there was an opening in the Tank Plant and Keith was reemployed at his old job by Chrysler.

I see no need to decide whether the assembly job

[1] Keith first went to work at the Detroit Tank Plant on April 22, 1968. He was laid off on April 25, 1969. On the same day, he was referred by the supervisor of the Tank Plant for possible employment as an assembler at the Assembly Plant. He was reemployed in the Tank Plant on August 4, 1969.

[2] The appeal board found, and the record supports the finding, that the job Keith would have been offered was as an assembler.

was "suitable" within the meaning of § 29(1)(d) of the act,[3] as I am satisfied that Keith had "good cause" for not accepting a transfer.

The purpose of the Employment Security Act is to protect persons who become "unemployed through no fault of their own".[4] Keith, who was laid off, clearly was a person within that intendment.

A person otherwise entitled to benefits is obliged, however, to mitigate his wage-loss damages, and may lose his right to unemployment benefits if he refuses to report for available suitable work.

This obligation to mitigate is subject to a proviso. Available suitable work may be refused for "good cause". Such a refusal is legally justified and does not disqualify one from benefits.

It has been argued that Keith had a choice. He could (i) accept the job at the Assembly Plant, thereby impairing his chances of returning to the Tank Plant, or (ii) refuse the job at the Assembly Plant, thereby preserving his job options but at

---

[3] "Sec 29. (1) An individual shall be disqualified for benefits in all cases in which he:

"(a) Has left his work voluntarily without good cause attributable to the employer or employing unit, or

"(b) Has been discharged for misconduct connected with his work, whether or not such discharge has subsequently been reduced to a disciplinary lay off or suspension, or for intoxication while at work, or

"(c) Has failed without good cause to apply for available suitable work of which he has been notified by the employment office or the commission, or

"(d) Being unemployed has failed without good cause to report to his former employer or employing unit within a reasonable time after notice from said employer or employing unit for an interview concerning available suitable work with said former employer or employing unit, or

"(e) Has failed without good cause to accept suitable work when offered him, or to return to his customary self employment, if any, when so directed by the employment office or the commission". MCLA 421.29; MSA 17.531.

[4] MCLA 421.2; MSA 17.502.

the same time foregoing his right to unemployment compensation.

The argument begs the question. The question presented in this case is whether Keith is entitled to unemployment compensation benefits even though he refused the job at the Assembly Plant. The Legislature, in providing for disqualification of an unemployed person who fails without "good cause" to report to his former employer for "available suitable work", clearly intended that an unemployed person could refuse available suitable work for "good cause".

The question presented narrows down to whether a cause not attributable to the employer —a cause personal to the employee—can constitute good cause; and, if so, whether the cause advanced by Keith was good cause.

I conclude that the term "good cause" as used in the Employment Security Act means nothing more than good reason—a substantial reason—for refusing to accept the proffered employment, and that a cause personal to the employee can be good cause. I also conclude that on the facts of this case Keith had good cause to refuse the proffered employment.

In a recent case, *In re Watson,* 273 NC 629; 161 SE2d 1 (1968), the Supreme Court of North Carolina held that a mother, who had been laid off from her job on the first shift, had good cause for refusing like work on the second shift because her presence at home during the hours of the second shift was required to take care of her 9-year-old child.

The Michigan act and the North Carolina act provide, in general, for disqualification from benefits of (1) *employed* persons who leave work voluntarily without "good cause *attributable to the*

*employer,"* and of (2) *unemployed* persons who fail
without "good cause" to accept suitable work from
the former employer or another source of employment.

In the *Watson* case, the North Carolina Supreme
Court said that it was significant that the words
"attributable to the employer," which qualify the
words "good cause" in the case of an employed
person who leaves his work voluntarily, do not
qualify the words "good cause" in the case of an
employed person who becomes unemployed involuntarily. The Court concluded that the omission
of the qualifying words was not an oversight on
the part of the Legislature, and that in the case of
an involuntarily-unemployed person (273 NC 635;
161 SE2d 7), "the 'good cause' for rejection of
*tendered employment* need not be a cause attributable to the employer". (Emphasis supplied.)[5]

Other courts have also concluded that a parent
has good cause to refuse employment which would
require that a child be left alone.[6] It has also been
held that a wife has good cause to quit a job when
her husband is transferred to a new location,[7] and
that there is good cause to refuse work that conflicts with one's religious beliefs.[8]

The courts of this state have found persons to be
eligible for unemployment benefits who refused

[5] Similarly, see *Sturdevant Unemployment Compensation Case,* 158
Pa Super 548, 554–555; 45 A2d 898, 902 (1946).

[6] *Mee's Bakery, Inc v Unemployment Compensation Board of Review,* 162 Pa Super 183; 56 A2d 386 (1948); *Yordamlis v Florida
Industrial Commission,* 158 So 2d 791 (Fla App, 1963).

[7] *Berry, Whitson & Berry v Division of Employment Security,* 21 NJ
73; 120 A2d 742 (1956); *Sturdevant Unemployment Compensation
Case, supra.*

[8] *Wallace v Bureau of Unemployment Compensation,* 160 NE2d 580
(Ohio, CP Summitt County, 1959); *cf. Detroit Gravure Corp v Employment Security Commission,* 366 Mich 530 (1962); *Williams v Florida
Industrial Commission,* 135 So 2d 435 (Fla App, 1961).

work because of fear of crossing a picket line,[9] or because of religious beliefs,[10] or because similar prior employment had aggravated a nervous condition.[11]

This, of course, does not mean that every personal reason is a good reason. The *Watson* Court delineated a sensible standard when it declared (273 NC 635; 161 SE2d 7):

"In the light of the legislative declaration of policy contained in the Employment Security Act, we conclude that an employee, having been separated from his job through no fault of his own, rejects other tendered employment for 'good cause' *when his reason for such rejection would be deemed by reasonable men and women valid and not indicative of an unwillingness to work.*"(Emphasis supplied.)[12]

Measuring Keith's reason for rejecting employment at the Assembly Plant by this standard, it is entirely clear that his refusal to accept employment at the Assembly Plant was for good cause and was not indicative of an unwillingness to work.

If Keith had accepted the job as an assembler, it

[9] *Cf. Kalamazoo Tank & Silo Co v Unemployment Compensation Commission,* 324 Mich 101 (1949); *Dynamic Manufacturers, Inc v Employment Security Commission,* 369 Mich 556 (1963).

[10] *Detroit Gravure Corp v Employment Security Commission, supra.*

[11] *Cf. First State Bank of East Detroit v Keegan,* 366 Mich 544 (1962). Similarly, see *Harraka v Board of Review of Department of Employment Security,* 98 RI 197; 200 A2d 595 (1964).

[12] *Cf. Sturdevant Unemployment Compensation Case, supra,* 158 Pa Super 556; 45 A2d 903, where the Court said:

"Of course, 'good cause' and 'personal reasons' are flexible phrases * * * . However, in whatever context they appear, they connote, as minimum requirements, real circumstances, substantial reasons, objective conditions, palpable forces that operate to produce correlative results, adequate excuses that will bear the test of reason, just grounds for action, and always the element of good faith."

Similarly, see *Harraka v Board of Review of Department of Employment Security, supra.*

was uncertain when, if ever, he would return to
his former job as a washer and degreaser. If he
had accepted the new job at the Assembly Plant,
he would have been required to stay on that job
until an opening in the old job at the Tank Plant
coincided with a period of layoff at the Assembly
Plant. There is no evidence that Keith was a
shirker or malingerer. He was genuinely and justi-
fiably fearful of making a decision which would
appreciably alter his work career for years to
come. If Keith had accepted the job at the Assem-
bly Plant, he could not return to the Tank Plant
except under circumstances he had good reason to
believe might never occur; had Keith accepted, he
could well have found himself working on an
assembly line years after the layoff period was
over.

I do not wish to be understood as saying that a
laid-off employee may refuse work which he finds
to be personally distasteful. Ordinarily, the ameni-
ties associated with the proffered employment go
to the question of the *suitability* of the job, and are
not pertinent on the issue whether the employee
has good cause for refusing the job. But where the
job offered, if accepted, carries with it a preemp-
tory opportunity cost—where it effectively bars the
employee from returning to or accepting a job
which he prefers and which he has good reason to
believe he can obtain—the employee has good
cause for rejecting the proffered job.

This is not a case of a suitable temporary job
offer or of an offer of a suitable job which, al-
though ostensibly permanent, the employee is ac-
tually free to leave at any time without penalty.
In this case the job offered had strings attached. If
Keith had accepted the assembly job, he would
have given up his contractual right to prompt

reemployment at the Tank Plant when a job opening occurred.

The act strikes a balance in obliging a laid-off employee to accept available suitable work but in relieving him of that obligation if he has good cause for rejecting the work. In this case, even if the Assembly Plant job was suitable, Keith had a good and substantial reason and, hence, good cause, for declining that job.

To the extent that *Losada v Chrysler Corp,* 24 Mich App 656 (1970), expresses a view inconsistent with that adopted in this opinion, I cannot follow it. In *Losada* the Court cited no case law applying the "good-cause" standard. Its *ipse dixit* to the effect that a personal reason cannot be good cause is in opposition to the case law of this and other jurisdictions.

One panel of our Court is not bound by the decisions of other panels, see *Buscaino v Rhodes,* 20 Mich App 329 (1969). As a matter of policy, our Court has concluded that one panel is not bound by the decision of another panel and that it is for the Supreme Court to resolve conflicts.[13]

I would reverse and remand to the appeal board for the entry of an order awarding compensation.

---

[13] For example, compare *Maryland Casualty Co v McGee,* 32 Mich App 539 (1971), with *Western Casualty & Surety Co v Strange,* 3 Mich App 733 (1966); and *Lexington Townhouses Cooperative v City of Warren,* 32 Mich App 523 (1971), with *Colonial Townhouse Cooperative, Inc v City of Lansing,* 25 Mich App 24 (1970); and *People v Ronald Robinson,* 37 Mich App 15 (1971), with *People v Kelley,* 32 Mich App 126 (1971).