DUEWEKE v MORANG DRIVE GREENHOUSES, INC

Docket No. 63973. Argued November 17, 1980 (Calendar No. 11).—
Decided November 2, 1981.

Eric Dueweke applied for unemployment compensation benefits
after he voluntarily quit his employment with Morang Drive
Greenhouses, Inc., on May 16, 1975, for "personal reasons". The
Employment Security Commission decided that he had left his
employment without good cause attributable to the employer
and that he was disqualified for six weeks under the Employ-
ment Security Act. Plaintiff reapplied for benefits six weeks
later, and the Employment Security Commission sent him to
his former employer, who had notified the commission that the
plaintiff's job was still available. It is undisputed that the
employer offered Dueweke the job which he had quit and that
he did not accept. The Employment Security Commission, its
hearing referee, and the Employment Security Appeal Board
decided that the plaintiff was disqualified for refusing suitable
work without good cause. The Wayne Circuit Court, Charles
Kaufman, J., reversed on the ground that an offer of the same
job is not the equivalent of suitable work as a matter of law.
The Court of Appeals, Beasley, P.J., and Allen and D. C. Riley,
JJ., reversed the judgment of the circuit court, holding that an
offer of the same job could constitute an offer of suitable work,
and that the plaintiff's reasons for the refusal were personal
and thus not good cause (Docket No. 78-2487). Plaintiff appeals.

In an opinion by Justice Kavanagh, joined by Justices Wil-
liams, Levin, and Moody, the Supreme Court held:

An offer of former work can be an offer of suitable work; the
reasons for refusing to return to work, including the fact that
the claimant quit the job offered, go to the question of good
cause for refusing the offer. Personal reasons for refusing may
constitute good cause under the Employment Security Act.

1. In 1965, the Employment Security Act was amended to

REFERENCES FOR POINTS IN HEADNOTES

[1-9] 76 Am Jur 2d, Unemployment Compensation §§ 59, 68.

[6] Harassment or other mistreatment by employer or supervisor as
"good cause" justifying abandonment of employment. 76 ALR3d
1089.

provide a penalty period and a reduction in benefits, instead of the former total disqualification, for persons who were voluntarily unemployed, so that they might become qualified. The plaintiff argues that once a claimant has been disqualified for voluntarily quitting a job and becomes requalified the claimant should not be disqualified for refusing to return to the same work. The Employment Security Appeal Board must decide the suitability of the work and separately assay the reasonableness of a claimant's refusal. The Court declined to hold that the former work can never be suitable because, in most instances, the former work would probably meet the statutory criteria for suitable work. The claimant's reasons for refusing to return to the work, including the fact that he previously quit the job, go to the question of good cause for refusing the offer. The record does not show that the Employment Security Commission ever considered the applicable statutory criteria in determining whether Dueweke refused an offer of suitable work, and accordingly, the matter is remanded to the Employment Security Commission for that consideration.

2. The Employment Security Commission must consider the evidence regarding the plaintiff's allegation of illegal overtime payment procedures in determining the suitability of the work. It is implicit in the Employment Security Act that an offer of work involving working conditions which are illegal would render the work unsuitable.

3. The hearing referee in this case concluded that, although the claimant had good personal reasons, the reasons were not sufficient good cause for the claimant to refuse an offer of suitable work. "Good cause" as used in the Employment Security Act means nothing more than good reasons—a substantial reason—for refusing to accept the proffered employment. A cause personal to the employee can be good cause. An employee, having been separated from his job, rejects other tendered employment for good cause where his reason for such rejection would be deemed valid by reasonable men and women and not indicative of an unwillingness to work.

Reversed and remanded to the Employment Security Commission for reconsideration.

Chief Justice Coleman, joined by Justices Fitzgerald and Ryan, agreed that an offer of the same job as the one that was voluntarily abandoned can qualify as suitable work but disagreed with the standard of "good cause" adopted by the majority opinion.

1. The statute lists the circumstances which make work unsuitable as a matter of law and does not include former

work. The inclusion of express criteria in the statute implies the exclusion of other factors. Former work is not unsuitable work as a matter of law; each case must be evaluated on the facts presented. That conclusion is consistent with the case law and with the decisions of the Employment Security Commission, which are accorded great weight in construing the statute. If the conditions listed in the statute are to be enlarged, the Legislature should make the change.

2. In this case, the plaintiff testified that he quit because of a "personality conflict" and because there was no room for advancement. He did not mention any of the reasons listed in the statute as good cause for refusing the offer of his former job. The plaintiff testified that he would not return to his old job unless he received a raise of $20 per week. Failure to receive the increase in pay did not make the work unsuitable and was not good cause to refuse the offer.

3. The plaintiff testified that he was not aware of the possibility of illegal overtime payment procedures when he quit his job and he failed to mention it to his employer or to claim it at the hearing as a reason for refusing the offer of work. His testimony that he would return to work if he received a raise of $20 per week indicates that his refusal was not based on any perception of illegality of the offer. No claim was made or evidence introduced showing that the work offered was on conditions substantially less favorable than those prevailing for similar work in the locality. Therefore, the conclusion by the hearing referee that the work offered was suitable under the statute is not reversible error.

4. The standard adopted by the Court, that "good cause" is what reasonable persons would believe it to be and that a cause personal to the employee can be good cause, is too broad because it focuses on the personal concerns of one party with no provision for balancing the obligations of the other parties. The employer is required to pay unemployment benefits in situations over which it would have no control. The Employment Security Act provides for more than consideration of the needs of the employee seeking unemployment compensation. The weight to be given the effects of the statute on the parties is a legislative decision, and the Legislature did not intend to make such a broad extension of the Employment Security Act. The concerns of an employee about remuneration and the failure to receive a raise do not alone constitute good cause to refuse an offer of the same work. It is unnecessary to reach the question whether the case law should be modified under other circumstances.

91 Mich App 27; 282 NW2d 823 (1979) reversed.

Opinion of the Court

1.  Unemployment Compensation — Disqualification — Voluntary
    Unemployment — Suitable Work.

    A claimant who has been disqualified for unemployment benefits
    because he left work voluntarily without good cause attribut-
    able to the employer and who serves the applicable requalifica-
    tion period and reapplies for benefits may subsequently be
    disqualified for refusing, without good cause, to return to the
    same work when offered by the employer where the former
    work meets the statutory criteria for "suitable work" (MCL
    421.29; MSA 17.531).

2.  Unemployment Compensation — Disqualification — Voluntary
    Unemployment — Suitable Work.

    The Employment Security Appeal Board must decide the suitabil-
    ity of the work offered to a claimant and separately assay the
    reasonableness of the claimant's refusal of suitable work; the
    claimant's reasons for refusing an offer to return to his former
    employment, including the fact that he previously quit the job,
    go to the question of good cause for refusing the offer (MCL
    421.29; MSA 17.531).

3.  Unemployment Compensation — Disqualification — Suitable
    Work.

    The Employment Security Commission must consider, on the
    record, the express statutory criteria in determining the issue
    of the suitability of work offered to a claimant in order to
    disqualify the claimant for refusing the offer (MCL 421.29;
    MSA 17.531).

4.  Unemployment Compensation — Disqualification — Suitable
    Work — Illegal Working Conditions — Minimum Wage.

    An offer of work involving working conditions which are illegal
    would render the work unsuitable; therefore, the Employment
    Security Commission in determining the suitability of work
    offered must consider an allegation by the claimant that the
    offer would result in an illegal overtime payment procedure
    (MCL 421.29; MSA 17.531).

5.  Unemployment Compensation — Disqualification — Suitable
    Work — Good Cause — Words and Phrases.

    "Good cause" as used in the disqualification provision of the
    Employment Security Act means nothing more than good
    reason—a substantial reason—for refusing to accept the prof-

fered employment, and a cause personal to the employee can be good cause (MCL 421.29; MSA 17.531).

6. UNEMPLOYMENT COMPENSATION — DISQUALIFICATION — SUITABLE WORK — GOOD CAUSE.

The Employment Security Commission in considering whether a claimant had good cause for refusing to return to his former employment without an increase in pay because of a "personality conflict" between the claimant and the employer's general manager, if it finds the claimant's former job to be suitable work under the Employment Security Act, should determine whether the claimant's reasons would be deemed valid by reasonable men and women and not indicative of an unwillingness to work (MCL 421.29; MSA 17.531).

DISSENTING OPINION BY COLEMAN, C.J.

See headnotes 1, 3.

7. UNEMPLOYMENT COMPENSATION — DISQUALIFICATION — VOLUNTARY UNEMPLOYMENT — SUITABLE WORK.

*A claimant is disqualified for unemployment benefits for refusing to return to his former employment where the claimant testified that he had quit because of a "personality conflict" between him and the employer's general manager and because there was no room for advancement in the job, and that he would not return to his old job unless he received a raise of $20 per week; the failure to receive an increase in pay did not make the work unsuitable and was not good cause to refuse the work (MCL 421.29; MSA 17.531).*

8. UNEMPLOYMENT COMPENSATION — DISQUALIFICATION — SUITABLE WORK — GOOD CAUSE — WORDS AND PHRASES.

*A standard that "good cause" as used in the disqualification provision of the Employment Security Act is what reasonable persons would believe it to be and that a cause personal to the employee can be good cause is too broad because it focuses on the personal concerns of one party with no provision for balancing the obligations of the other parties; the weight to be given the effects of the Employment Security Act on the parties is a legislative decision, and the Legislature did not intend to make such a broad extension of unemployment benefits (MCL 421.29; MSA 17.531).*

9. UNEMPLOYMENT COMPENSATION — DISQUALIFICATION — SUITABLE WORK — GOOD CAUSE.

*The concerns of an employee about remuneration and failure to*

*receive desired raises do not alone constitute "good cause"*
*under the disqualification provision of the Employment Secu-*
*rity Act to refuse an offer of former employment (MCL 421.29;*
*MSA 17.531).*

Wayne County Neighborhood Legal Services (by
*Jeanne Mirer* and *Robert F. Gillett)* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *David A. Voges*
and *Edward Jan Setlock,* Assistants Attorney Gen-
eral, for defendant Michigan Employment Security
Commission.

Amici Curiae:

*Jordan Rossen,* Associate General Counsel, and
*Rothe, Mazey, Mazey & Hamburger, P.C.,* for In-
ternational Union, United Automobile, Aerospace,
and Agricultural Implement Workers of America.

Michigan Legal Services (by *Charlene Snow).*

*Clark, Klein & Beaumont* (by *Dwight H. Vin-
cent, J. Walker Henry,* and *John R. Spreitzer)* for
Michigan Manufacturers Association and Employ-
ers Unemployment Compensation Council.

KAVANAGH, J. This appeal involves the construc-
tion and application of § 29(1)(e)[1] of the Michigan
Employment Security Act (MESA) in a situation
where a claimant refuses an offer of the same job
he previously quit, having served a disqualification

---

[1] MCL 421.29(1)(e); MSA 17.531(1)(e), provided that an individual
shall be disqualified in all cases in which he "[h]as failed without good
cause to accept suitable work when offered him, or to return to his
customary self-employment, if any, when so directed by the employ-
ment office or the commission".

under § 29(1)(a)[2] of the MESA for such voluntary quit. The pertinent issues raised on appeal are (1) whether, as a matter of law, a claimant who has voluntarily separated from an employer, and has requalified under § 29(3) of the MESA, may be further disqualified under § 29(1)(e) for refusing to accept an offer of his former job under the same working conditions, and (2) assuming such an offer is suitable work, whether the claimant had good cause to refuse the offer.

We reverse and remand to the Michigan Employment Security Commission (MESC) for reconsideration in accordance with this opinion.

On May 16, 1975, the plaintiff-appellant, Eric Dueweke, voluntarily terminated his employment relationship with Morang Drive Greenhouses, Inc., and applied for benefits. The MESC determined that he had left his employment without good cause attributable to the employer and imposed a disqualification under § 29(1)(a) of the MESA.

After the plaintiff-appellant served a six-week requalification period, he refiled his application for benefits and was sent by the MESC to his former employer who had notified the commission that "[c]laimant's position with us is still open". Although there is a dispute as to what transpired between Mr. Dueweke and his former employer during their meetings, it is undisputed that the employer indicated on an MESC form that Mr. Dueweke was reoffered the job he had already quit and that he did not accept it.

The MESC then ruled that plaintiff-appellant was disqualified under § 29(1)(e) of the MESA for

---

[2] MCL 421.29(1)(a); MSA 17.531(1)(a), provided that an individual shall be disqualified in all cases in which he "[h]as left work voluntarily without good cause attributable to the employer or employing unit".

refusing to accept suitable work without good cause. The referee and the appeal board affirmed.

On appeal to the Wayne Circuit Court, the appeal board's decision was reversed, but in turn the Court of Appeals reversed the circuit court.

The basic purpose of the MESA is to provide relief to the unemployed worker and his family from the burden of involuntary unemployment. MCL 421.8(2); MSA 17.508(2). As originally enacted, the MESA totally disqualified an individual who was voluntarily unemployed from receiving unemployment benefits. In 1965, the act was amended to provide for a penalty period and a reduction in benefits rather than total disqualification[3] to individuals who were voluntarily unemployed so that such individuals might requalify and come within the purpose of the MESA.

The plaintiff-appellant asks us to hold that once a claimant has been disqualified under § 29(1)(a) and requalified, he or she cannot subsequently be disqualified under § 29(1)(e) for refusing to return to the same work. We refuse to do so.

The board must pass on the suitability of the work, and also (and separately) assay the reasonableness of a claimant's refusal of it. We decline to hold that the former work can never be suitable work, for in most instances the former work would probably meet the statutory criteria for suitable work. However, the reasons for refusing to return to the work, including the fact that claimant previously quit the job offered, go to the question of good cause for refusing the offer.

---

[3] 1965 PA 281. A 1975 amendment to the act changed the requalifying period from 6 weeks to 13 weeks for claimants covered by § 29(1)(a). 1975 PA 110. 1980 PA 358 reinstates the total disqualification for a worker who has left work voluntarily without good cause attributable to the employer or employing unit with one exception. These amendments were enacted after the instant case arose.

The MESA, as it read before the 1980 amendment, sets forth criteria for determining whether work is suitable in § 29(6): "[T]he commission shall consider the degree of risk involved to his health, safety, and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence." MCL 421.29(6); MSA 17.531(6).

The record does not show that these criteria were ever considered in determining whether Mr. Dueweke refused an offer of suitable work. Accordingly, we remand to the MESC to consider the express statutory criteria in determining the issue of suitability.

The plaintiff-appellant alleges that the offer of work contains conditions that would result in an overtime payment procedure which violates the Federal Fair Labor Standards Act, 29 USC 207(a)(1), and the Michigan Minimum Wage Law of 1964, as amended, MCL 408.384a; MSA 17.255(4a). We direct the MESC to consider the evidence regarding this allegation in arriving at its determination of suitability. We find it implicit in the statute that an offer of work involving working conditions which are illegal would render the work unsuitable.

The plaintiff-appellant contends that, assuming an offer of suitable work was made, he had good cause to refuse the offer and is therefore entitled to unemployment benefits.

The referee's opinion states

"that although claimant had good personal reasons for not wishing to return to the involved employer without an increase in pay, said reasons were not of such a nature as to show good cause for refusing to

accept suitable employment under [§§] 29(1)(e), 29(6) and 29(7)(b) of the act."

It further states "that the personality conflict between the claimant and the general manager of the employer and the question of additional pay, beyond $180 per week, was not sufficient good cause for the claimant to refuse an offer of suitable work".

The Court of Appeals applied the rule in *Losada v Chrysler Corp,* 24 Mich App 656, 660; 180 NW2d 844 (1970), which held that personal reasons were not good cause under the statute. *Losada* was followed by a split decision in *Keith v Chrysler Corp,* 41 Mich App 708; 200 NW2d 764 (1972), in which the majority agreed with the *Losada* rule. The decision was affirmed by an equally divided Supreme Court. *Keith v Chrysler Corp,* 390 Mich 458; 213 NW2d 147 (1973).[4]

We conclude that personal reasons may constitute good cause under § 29(1)(e) of the MESA. In doing so, we adopt the rationale and standard of good cause set forth in Justice (then Judge) LEVIN's dissenting opinion in *Keith,* 41 Mich App 708, 712-715.[5]

If the MESC finds the plaintiff-appellant's former job to be suitable according to the criteria set forth in the statute and in this opinion, it should evaluate Mr. Dueweke's reasons for refusing the work to determine whether his reasons for such

---

[4] Justice LEVIN did not participate because he was a member of the Court of Appeals panel that originally decided the *Keith* case. As a member of that panel, he dissented from the majority's application of the rule of *Losada.*

[5] We recognize that *Keith* involved § 29(1)(d) (refusal without good cause to report within a reasonable time for an interview concerning available suitable work) and that the instant case is a § 29(1)(e) case. We do not find this distinction important for the purposes of our analysis.

rejection would be deemed valid by reasonable men and women and not indicative of an unwillingness to work.

Reversed and remanded to the Michigan Employment Security Commission for reconsideration in accordance with this opinion.

WILLIAMS, LEVIN, and BLAIR MOODY, JR., JJ., concurred with KAVANAGH, J.

COLEMAN, C.J. (to affirm). We disagree, in part, with the opinion of the Court and would affirm the decision of the Court of Appeals.[1]

The central legal issue is whether an offer of the same employment to an employee who has voluntarily quit cannot, as a matter of law, constitute an offer of suitable work so as to disqualify the employee from unemployment benefits pursuant to MCL 421.29(1)(e); MSA 17.531(1)(e).

We agree that an offer of the same job as that voluntarily abandoned can qualify as "suitable work".

However, we would not remand to the Michigan Employment Security Commission (MESC) for reconsideration in light of statutory criteria and a standard adopted from a Court of Appeals dissent in Keith v Chrysler Corp, 41 Mich App 708, 714; 200 NW2d 764 (1972).

First, a reading of the transcript persuades us that the statutory criteria already have been considered. There is competent and material evidence to support the conclusion that plaintiff refused suitable work without good cause attributable to the employer.

Second, we cannot subscribe to the "good cause"

_____

[1] Dueweke v Morang Drive Greenhouses, Inc, 91 Mich App 27; 282 NW2d 823 (1979).

standard stated in the *Keith* dissent. Although *Keith* does not concern a case of voluntary quitting, it is argued that the standard set forth in the dissent should be adopted in this situation. The opinion quotes from *In the Matter of Watson,* 273 NC 629, 635; 161 SE2d 1 (1968), stating:

"[W]e conclude that an employee, having been separated from his job through no fault of his own, rejects other tendered employment for 'good cause' when his reason for such rejection would be deemed by reasonable men and women valid and not indicative of an unwillingness to work."

Although we disagree, the record supports the decision of the referee even under that standard stated in the dissent in *Keith.*

I

The history of the case, now six years after plaintiff quit voluntarily on May 16, 1975, after 10-1/2 months of work as a *full-time salaried supervisor* in Morang Drive Greenhouses, Inc., is revealing.

1. After quitting, plaintiff was disqualified from receiving unemployment benefits for six weeks, MCL 421.29(1)(a); MSA 17.531(1)(a).

2. Defendant then was notified by MESC and plaintiff presented a form for verification of availability to employers (MESC Form No. 1323) to the employer, who completed it, saying that there was work available consisting of the "same job he left", but that the employee "refused [the] job due to [a] personality conflict with [the] general manager after leaving". However, in the hearing on the claim, plaintiff said, "[L]et me state that I believe this whole question of personality conflict has been

a bit overblown". He said he never at any time had made a statement that he would not return for that reason. When asked by the referee, "Would you have gone back to Morang regardless of the conflict * * * in personality?", plaintiff answered "Yes".

3. On November 12, 1975, MESC determined that plaintiff had failed without good cause to accept suitable work when it was offered.

4. Plaintiff protested and MESC issued a redetermination. The result was the same.

5. Plaintiff appealed to a referee, who, after a full hearing, affirmed MESC.

6. Plaintiff appealed to the Employment Security Appeal Board, which affirmed on June 9, 1977.

7. Appeal then was taken to the Wayne Circuit Court which reversed the decision of MESC on May 25, 1978, finding in effect that the period of disqualification was a penalty to be served and that an offer of the same work after serving the penalty was not an offer of "suitable work".

8. Appeal was taken to the Court of Appeals, which reversed the circuit court on June 20, 1979, finding that plaintiff refused suitable work without good cause.

9. This Court would remand to MESC for reconsideration (again) in light of the statutory criteria and the newly added criteria.

This case should be ended and I see no reason to start once more the ascent from MESC.

## II

MCL 421.29; MSA 17.531 provided in part:

"(1) An individual shall be disqualified for benefits in all cases in which he:

\* \* \*

"(e) Has failed without good cause to accept suitable work when offered him, or to return to his customary self employment, if any, when so directed by the employment office or the commission, \* \* \*

\* \* \*

"(6) In determining whether or not any work is suitable for an individual, the commission shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence.

"(7) Notwithstanding any other provisions of this act, no work shall be deemed suitable and benefits shall not be denied under this act to any otherwise eligible individual for refusing to accept new work under any of the following conditions: (a) If the position offered is vacant due directly to a strike, lockout or other labor dispute; (b) if the remuneration, hours or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality; (c) if as a condition of being employed the individual would be required to join a company union or to resign from or refrain from joining any bona fide labor organization." 1965 PA 281.

### III

We agree with the opinion of the Court that former work is not, as a matter of law, unsuitable work.

First, § 29(7) lists those factors which make work unsuitable as a matter of law and does not include "former work". The inclusion of express criteria in the statute implies the exclusion of other factors. *Alan v Wayne County,* 388 Mich 210; 200 NW2d 628 (1972). If the conditions listed in § 29(7) are to

be enlarged, the Legislature should make the adjustment.

The conclusion that the Legislature did not intend former work to be unsuitable as a matter of law is consistent with decisions from this Court, courts in other jurisdictions, and the MESC.

In *Bingham v American Screw Products Co,* 398 Mich 546; 248 NW2d 537 (1976), this Court decided that former work may not be suitable if the distance from the individual's residence is too great. If former work was unsuitable as a matter of law, the Court would not have needed to address the individual factors listed in § 29(6) to resolve *Bingham.*

In *S S Kresge Co v Unemployment Compensation Comm,* 349 Mo 590, 595-596; 162 SW2d 838 (1942), the Court addressed 1939 Mo Rev Stat, § 9431,[2] stating:

"We perceive nothing inconsistent between the provisions of Subsecs I and III [These subsections are the Missouri clauses on voluntary quitting and refusal to accept suitable work without good cause that are almost identical to the Michigan clauses]. * * * A myriad of reasons may be advanced by different employees and a given employee may have a number of reasons for quitting work. Some may be based on objections to the work. Others may be based on reasons not connected with the work. There is no provision in the law upon which to plant a ruling that the former work or that new work is or is not suitable. In given instances new work may be less suitable than the former work, and for employees, skilled in a particular line of work, the former work may be the most acceptable or, in conceivable instances, the only acceptable available work for the given employee. Being less suitable does not make the work not suitable. The argument, advanced by the Commission, that a ruling that the former work may be

---

[2] See Mo Rev Stat § 288.050.1, subds (1) and (2).

'suitable work' within the provisions of Subsec III permits the employer to arbitrarily wipe out the employee's benefit rights under the law begs the question, and the other extremity that it is the employee who determines the work is not suitable finds no support in the law. Arbitrary standards having no foundation in the specific provisions of law are not to be set up. Each individual case must rest upon its own facts."[3]

Finally, the MESC has made a similar construction of the statute. Section 76.131 of the Precedent Manual issued by the MESC provides:

*"Refusal Following a Prior Disqualification With Same Employer.* Situations will occur where an employer will protest a claimant's right to benefits because the claimant has failed to apply for, accept, or report to a former employer concerning, available suitable work and where there has been a prior adjudication on a previous offer, or where there has been a prior adjudication under other disqualifying provisions of § 29 of the act, such as voluntary leaving.

"The Commission cannot refuse to impose a disqualification for a subsequent refusal of work merely because the claimant had already been disqualified for quitting, or for refusing a previous offer, with the same employer.

*       *       *

"It is recognized that adjudication of distinct acts, separations or discharges involving the same employer may result in the claimant being disqualified more than

---

[3] Other jurisdictions have reached similar resolutions of this issue, see *California Appeal Board Benefit Decision No 4666,* 2 Unemployment Ins Rep (CCH), Cal ¶ 1965.933, *Stensvad v Industrial Comm,* 167 Colo 140; 445 P2d 898 (1968), *Wilson v Review Board of Employment Security Division,* — Ind App —; 369 NE2d 675 (1977), *vacated* — Ind App —; 373 NE2d 331 (1978), *Massachusetts Board of Review Decision No 37,* 6 Unemployment Ins Rep (CCH), Mass ¶ 1965.581, *Lewis v Minneapolis Moline, Inc,* 288 Minn 432; 181 NW2d 701 (1970), *Russell v Catherwood,* 33 AD2d 592; 304 NYS2d 415 (1969), *Unemployment Compensation Board of Review v Lowell,* 24 Pa Commw Ct 309; 355 A2d 616 (1976), *Allen-Bradley Co v Dep't of Industry, Labor & Human Relations,* 58 Wis 2d 1; 205 NW2d 129 (1973).

once, *e.g.,* under the voluntary leaving and suitable work provisions of the act. However, if the proper application requires a disqualification based on the issue at hand, then such disqualification must be made."

This construction of the statute by those charged with its administration is accorded great weight, *Magreta v Ambassador Steel Co,* 380 Mich 513; 158 NW2d 473 (1968), and is consistent with the interpretation applied in many jurisdictions.

We hold that former work is not unsuitable work as a matter of law. Each case must be evaluated on the facts presented.

## IV

However, we would affirm the decision of the MESC rather than remand. After reviewing the statutory criteria, the evidence presented, and the referee's opinion, we must conclude that the referee considered whatever evidence was presented and find that his opinion is not so inadequate as to preclude effective judicial review.

Plaintiff testified that he terminated his employment because of a personality conflict[4] and because there was no room for advancement. Although plaintiff had worked at the same job previously, he did not mention any of the factors listed in § 29(6) as a reason for refusing the offered work. No testimony was introduced indicating that the work involved any risk to plaintiff's health, safety or morals or that it was not within his physical

---

[4] Plaintiff said that the general manager's wife was more loyal to her husband than to him on the occasions she was under his supervision. She filled in for absentees or when extra help was needed in the various greenhouse components, sometimes working in defendant's area of responsibility. However, defendant denied that refusal of work was based on that "conflict".

ability or experience. Plaintiff was unemployed for over five months when he was offered his former job. He testified that he would not return to his old job unless he received a raise of $20 per week.

Plaintiff's testimony and prior performance and experience while employed in the same capacity, plus his failure to claim or mention any of the factors listed in § 29(6) as a reason for refusing the offered work belie any contention that he refused the work because it was unsuitable under § 29(6).

The referee's opinion underscores this conclusion. The opinion states:

"[A]lthough claimant had good personal reasons for not wishing to return to the involved employer *without an increase in pay,* said reasons were not of such a nature as to show good cause for refusing to accept *suitable employment* under [§§ ] 29(1)(e), 29(6) and 29(7)(b) of the act." (Emphasis added.)

The evidence supports this conclusion. Plaintiff testified that he believed defendant promised him a raise after six months but he never received the raise. The employer testified that he agreed to review plaintiff's rate of pay after six months. In this case, the failure to receive a pay increase did not make the work unsuitable and was not "good cause" to refuse suitable work.

The opinion of the Court also directs the MESC to consider evidence regarding allegations that the overtime wage scale may have violated federal and state laws.[5] However, plaintiff testified that he was not aware of this possibility when he quit and failed to mention it either to his employer or at the hearing as one of his reasons for refusing the

---

[5] See Federal Fair Labor Standards Act, 29 USC 207(a)(1); Michigan Minimum Wage Law of 1964, as amended, MCL 408.384a; MSA 17.255(4a). See also 29 USC 213(a)(1).

offer of work. His testimony that he would return to work if he received a $20 per week raise indicates that his refusal to accept the offered work was not based on any perception of illegality. Assuming, *arguendo,* that the law had been violated, plaintiff could have filed suit for back pay and other relief pursuant to 29 USC 216(b), MCL 408.393; MSA 17.255(13). The Commissioner of Labor or the courts provide a more appropriate forum for resolving these complex claims.

No claim was made or evidence introduced showing that the work offered was on conditions substantially less favorable than those prevailing for similar work in the locality. The referee's conclusion that the work offered was suitable under § 29(6) is not reversible.

## V

When considering the policy underlying the MESA, we cannot subscribe to the *Keith, supra,* standard adopted by the majority, that "good cause" is what reasonable persons believe it to be, although personal in nature and not attributable to the employer.

That standard is so broad as to be no standard within the concept of unemployment compensation. It focuses upon personal concerns of one party with no provision for balancing the obligations of the others governed by MESA.

The employer is required to pay benefits through contributions in situations over which it would have no control. In *Ohio Bureau of Employment Services v Hodory,* 431 US 471, 490; 97 S Ct 1898; 52 L Ed 2d 513 (1977), the United States Supreme Court stated:

"The unemployment compensation statute, however,

touches upon more than just the recipient. It provides for the creation of a fund produced by contributions from private employers. The rate of an employer's contribution to the fund varies according to benefits paid to that employer's eligible employees. Ohio Rev Code § 4141.25. Any action with regard to disbursements from the unemployment compensation fund thus will affect both the employer and the fiscal integrity of the fund. Appellee in effect urges that the Court consider only the needs of the employee seeking compensation. The decision of the weight to be given the various effects of the statute, however, is a legislative decision * * *."

We conclude that the Legislature did not intend such an extension of MESA.

## VI

The holding in *Losada v Chrysler Corp,* 24 Mich App 656; 180 NW2d 844 (1970),[6] is applicable to the facts of this case. The concerns about one's remuneration and failure to receive desired raises do not alone constitute good cause to refuse an offer of the same work so as to trigger benefits intended for "persons unemployed through no fault of their own". Although *Losada* should not be overruled, we do not reach the question of whether it would be subject to interpretation under more egregious circumstances.

Regardless of the standard ultimately adopted by the Court for determining good cause, there is

---

[6] In *Losada v Chrysler Corp,* 24 Mich App 656; 180 NW2d 844 (1970), the Court held that plaintiff's rejection of work which would take him out of "trim" and prevent his return to "trim", and at a slight reduction in pay, was a personal reason and did not comprise "good cause". It noted that the Employment Security Act provides for compensation "for the benefit of persons unemployed *through no fault of their own".* MCL 421.2; MSA 17.502.

no need to remand this case for findings either as to the suitability of the work or as to good cause for refusing it.

Having found that an offer of the same employment as that which plaintiff voluntarily quit can be an offer of suitable work, the record reveals no viable attack on its suitability. The record also reveals no sound basis for finding that plaintiff had good cause to refuse his previous employment —regardless of the fate of *Losada* or *Keith.*[7]

The findings of the referee and MESC are adequate on the record to support their conclusion.

This long legal journey should be concluded.

We would affirm.

Fitzgerald and Ryan, JJ., concurred with Coleman, C.J.

[7] Any person can voluntarily quit a job but fairness and economic reality require that not all persons who quit shall be remunerated when doing so. In this case, it would have been wise had plaintiff sought another placement prior to relinquishing the "bird in hand". If the pay was not commensurate with his perceived abilities, certainly going with no pay for some months (at least) while trying to obtain unemployment compensation did not serve the alleged purpose of wanting more money. Plaintiff's concern about not being placed in one of the new stores was one never communicated to the employer, who said he would have so placed him had he known of plaintiff's interest.