ANDERSON v TOP O'MICHIGAN RURAL ELECTRIC COMPANY

Docket No. 56559. Submitted January 14, 1982, at Lansing.—Decided
    July 20, 1982. Leave to appeal applied for.

Claimants Noah E. Anderson, Charles E. Bauman, Joe F. Boyn-
ton, Thomas Hennessy, William S. Holland, Merle L. Joles, and
Larry L. Piper were employed as line trade or field technician
employees of Top O'Michigan Rural Electric Company. The
field technician, line trade, and office worker employees consti-
tuted separate bargaining units in Local 876 of the Interna-
tional Brotherhood of Electrical Workers. The groups were
covered by separate collective-bargaining agreements, each of
which contained a no-strike provision. Subsequently, the office
workers went on strike. The claimants refused to cross the
office workers' picket line despite the no-strike provisions in the
contracts. The claimants applied for unemployment benefits
under the Michigan Employment Security Act but were found
to be disqualified because they were involved in a labor dispute
that was in progress. The claimants thereafter obtained em-
ployment with employers other than Top O'Michigan. When
the claimants were laid off from those jobs they again applied
for unemployment benefits. At that time, the MESC determined
that the prior disqualification had been terminated. Thereupon,
Top O'Michigan wrote to the claimants stating that their jobs
were available to them. The claimants refused that offer of
work because the labor dispute was still in progress. The MESC
determined that the claimants were not disqualified from re-

REFERENCES FOR POINTS IN HEADNOTES

[1] 76 Am Jur 2d, Unemployment Compensation §§ 93, 94.

[2] 76 Am Jur 2d, Unemployment Compensation §§ 59, 67.

General principles pertaining to statutory disqualification for unem-
    ployment compensation benefits because of strike or labor dis-
    pute. 63 ALR3d 88.

[3] 76 Am Jur 2d, Unemployment Compensation § 83.

[4] 76 Am Jur 2d, Unemployment Compensation § 78.

[5] 76 Am Jur 2d, Unemployment Compensation § 85.

Construction and application of provisions of unemployment com-
    pensation or social security acts regarding disqualification for
    benefits because of labor disputes or strikes. 28 ALR2d 287.

ceiving benefits. Top O'Michigan protested the determination and a hearings referee reversed the MESC determination. Thereafter, the MESC Board of Review reversed the referee's decision. The Charlevoix Circuit Court, Martin B. Breighner, J., affirmed the decision of the board of review. Top O'Michigan appeals. *Held:*

The award of benefits to the claimants should be affirmed. Refusal to accept an offer of work from an employer which is involved in a labor dispute should not work a disqualification for benefits under the MESA. The merits of a labor dispute are immaterial to determining entitlement to benefits under the MESA. By maintaining its neutrality, the MESC furthers the policy of the state providing that the unemployment compensation fund should not be used to finance a labor dispute nor aid an employer to break a strike.

Affirmed.

1. UNEMPLOYMENT COMPENSATION — APPEAL — MICHIGAN EMPLOYMENT SECURITY ACT.

A decision by the Michigan Employment Security Commission Board of Review should not be overturned on appeal unless it is contrary to law or is not supported by competent, material and substantial evidence on the record; in construing the Michigan Employment Security Act, the act should be given a liberal construction to afford coverage and a strict construction to effect a disqualification for benefits (MCL 421.38; MSA 17.540).

2. UNEMPLOYMENT COMPENSATION — VOLUNTARY LEAVING OF EMPLOYMENT — DISQUALIFICATION.

A claimant who has been disqualified for unemployment benefits because he left work voluntarily without good cause attributable to the employer and who serves the applicable requalification period and reapplies for benefits may subsequently be disqualified for refusing without good cause to return to the same work when offered by the employer where the former work meets the statutory criteria for "suitable work"; refusal to accept an offer of work from an employer who is involved in a labor dispute should not work a disqualification (MCL 421.29[1][e]; MSA 17.531[1][e]).

3. UNEMPLOYMENT COMPENSATION — STRIKING WORKERS.

Striking workers who are laid off after obtaining interim employment from another employer are entitled to receive unemployment benefits.

4. UNEMPLOYMENT COMPENSATION — LABOR DISPUTES.
    The merits of a labor dispute are immaterial to determining
    entitlement to benefits under the Michigan Employment Secu-
    rity Act.

5. UNEMPLOYMENT COMPENSATION — LABOR DISPUTES.
    The unemployment compensation fund should not be used to
    finance a labor dispute nor aid an employer to break a strike.

*Marston, Sachs, Nunn, Kates, Kadushin &
O'Hare, P.C.,* for employee-claimants.

*Frank J. Kelley,* Attorney General, *Louis J.
Caruso,* Solicitor General, and *James A. Burns,*
Assistant Attorney General, for Michigan Employ-
ment Security Commission.

*Stroup & Brown, P.C.,* for employer-appellant.

Before: D. E. HOLBROOK, JR., P.J., and J. H. GIL-
LIS and C. J. HOEHN,* JJ.

PER CURIAM. The employer herein, Top O'Michi-
gan Rural Electric Company, appeals a trial court
order affirming a determination by the Michigan
Employment Security Commission (MESC) that
unemployment benefits should be paid to claim-
ants. We affirm.

The claimants were each employed by Top O'Mi-
chigan as line trade employees or as field techni-
cian employees. These groups constituted separate
bargaining units in Local 876 of the International
Brotherhood of Electrical Workers (IBEW). The
groups were covered by separate collective-bar-
gaining agreements, each of which contained a no-
strike provision. The agreements were in force at
all times relevant hereto.

A third bargaining unit made up of office work-
ers was also a member of Local 876 of the IBEW.

* Circuit judge, sitting on the Court of Appeals by assignment.

On October 19, 1978, the office workers went on strike. Claimants refused to cross the office workers' picket line despite the no-strike provision in their contracts. They had been advised by a union agent that they would be fined a day's wages by their union for each day they crossed the picket line.

When the claimants initially applied for benefits under the Michigan Employment Security Act[1] (MESA) they were found to be disqualified under § 29(8)(a)(iv)[2] because they were involved in a labor dispute in progress.

Claimants thereafter obtained employment with employers other than Top O'Michigan. When claimants were laid off from those jobs they applied for unemployment benefits. At that time the MESC determined that under § 29(8) the prior disqualification had been terminated.

Upon being informed of that by the MESC, Top O'Michigan wrote to claimants stating that their jobs were available to them. Claimants refused that offer of work. The labor dispute was still in progress. The MESC determined that the offer of work was not suitable under § 29(7) of the act. Therefore, claimants were found not to be disqualified by § 29(1)(e) for refusing an offer of suitable work without good cause.

The MESC determination was protested by the employer and, upon appeal to a referee, the decision was reversed. The MESC Board of Review reversed the referee's decision in a two to one decision. The circuit court affirmed the decision of the board of review. This appeal followed.

A decision by the MESC Board of Review will not be overturned by the court unless it is con-

---

[1] MCL 421.1 et seq.; MSA 17.501 et seq.

[2] MCL 421.29(8)(a)(iv); MSA 17.531(8)(a)(iv).

trary to law or is not supported by competent, material, and substantial evidence on the record. MCL 421.38; MSA 17.540. *Linski v Employment Security Comm,* 358 Mich 239; 99 NW2d 582 (1959). In construing the Michigan Employment Security Act, the act must be given a liberal construction to afford coverage and a strict construction to effect a disqualification. *Great Lakes Steel Corp v Employment Security Comm,* 6 Mich App 656, 662; 150 NW2d 547 (1967), *aff'd* 381 Mich 249; 161 NW2d 14 (1968).

Section 29(8) of the act, which deals with labor dispute situations, reads, in part:

"An individual shall be disqualified for benefits for a week in which the individual's total or partial unemployment is due to a labor dispute in active progress, * * * in the establishment in which the individual is or was last employed * * *. An individual's disqualification imposed or imposable under this subsection shall be terminated by his performing services in employment with an employer in at least 2 consecutive weeks falling wholly within the period of the individual's total or partial unemployment due to the labor dispute, and in addition by earning wages in each of those weeks in an amount equal to or in excess of the individual's actual or potential weekly benefit rate with respect to those weeks based on the individual's employment with the employer involved in the labor dispute. * * *" MCL 421.29(8); MSA 17.531(8).

It is not disputed that claimants' initial disqualification was proper under the first sentence quoted above. It is also agreed that claimants terminated their labor dispute disqualification in the manner provided in the second sentence. Notwithstanding this, Top O'Michigan contends that when claimants refused its offer of work a new disqualification arose under § 29(1)(e), which reads:

"An individual shall be disqualified for benefits in the following cases in which the individual:

\* \* \*

"Failed without good cause to accept suitable work when offered the individual. \* \* \*" MCL 421.29(1)(e); MSA 17.531(1)(e).

The employer cites *Dueweke v Morang Drive Greenhouses, Inc,* 411 Mich 670; 311 NW2d 712 (1981), in support of its claim that its offer of claimants' former jobs was an offer of "suitable work" within the meaning of that section.

In *Dueweke,* the claimant voluntarily terminated his employment with Morang Drive Greenhouses, Inc. He was disqualified from receiving benefits under the MESA because it was determined that he had left his employment without good cause. The claimant thereafter served a six-week requalification period and reapplied for benefits. His former employer reoffered to him the job that he had quit. The offer was refused. The MESC ruled that the claimant was disqualified under § 29(1)(e) of the MESA for refusing to accept suitable work without good cause.

The claimant argued on appeal that once a disqualification has been imposed and a requalification period served, refusal to return to the same job cannot be grounds for disqualification under § 29(1)(e). The Michigan Supreme Court rejected this argument. Instead it held that an offer of former work may constitute suitable work for purposes of § 29(1)(e). The Court found that the record in that case lacked any indication that the MESC had considered the criteria for determining whether the claimant had refused an offer of suitable work. The case was accordingly remanded on those grounds.

Top O'Michigan argues that under *Dueweke,* the

claimants' refusal to return to their former jobs created a new disqualification under § 29(1)(e) for refusal to accept an offer of suitable work. The argument overlooks one glaring dissimilarity between the two cases. That is, the *Dueweke* case did not involve a labor dispute.

The MESA is very specific with respect to claims for benefits under circumstances involving a labor dispute. While § 29(6) sets forth the general criteria for determining whether work is "suitable", apart from and in addition to this, § 29(7) makes it clear that work available due to a labor dispute is not suitable within the meaning of the act. It states:

"Work shall not be suitable and benefits shall not be denied under this act to an otherwise eligible individual for refusing to accept new work under any of the following conditions: (a) If the position offered is vacant due directly to a strike, lockout, or other labor dispute; * * *" MCL 421.29(7); MSA 17.531(7).

Thus, refusal to accept an offer of work from an employer who is involved in a labor dispute will not work a § 29(1)(e) disqualification. The positions offered by the employer in the case at bar were vacant specifically because the claimants were engaged in a sympathy strike.[3] Accordingly, the

---

[3] While the MESC initially placed the claimants in category (iv) of § 29(8)(a), it would also have been correct to apply category (i) or (iii). Section 29(8)(a) of the act reads as follows:

"For the purposes of this subsection an individual shall not be considered to be directly involved in a labor dispute unless it is established that any of the following occurred:

"(i) At the time or in the course of a labor dispute in the establishment in which he was then employed, the individual in concert with 1 or more other employees voluntarily stopped working other than at the direction of the individual's employing unit.

"(ii) The individual is participating in or financing or directly interested in the labor dispute which causes the individual's total or partial unemployment. The payment of regular union dues, in

work offered was not suitable work under § 29(7) and the disqualification of § 29(1)(e) does not apply.

The employer claims that the section defining unsuitable work does not apply to this case because the offer of work made here was not an offer of "new work" as used in that section. Rather, claimants were offered their old jobs under the terms and conditions of a collective-bargaining agreement still in force.

To read the act as the employer has done would render wholly ineffective the provision contained in § 29(8) for terminating a labor dispute disqualification. The original text of the act did not include that language. By 1974 PA 104, the second sentence of § 29(8) was added. It allows claimants to terminate their § 29(8) disqualification by working for at least two weeks at wages equal to or higher than the wages that would have been obtained from the struck employer.

This Court may not ignore the express language added by the amendment, nor will we read other portions of the act so as to cancel the intended application of that language. Moreover, the position we take here comports with the 1968 decision by our Supreme Court holding that striking work-

amounts and for purposes established before the inception of the labor dispute, shall not be construed as financing a labor dispute within the meaning of this subparagraph.

"(iii) At any time when there is not a labor dispute in the establishment or department in which the individual was employed, the individual voluntarily stopped working, other than at the direction of the individual's employing unit, in sympathy with employees in some other establishment or department in which a labor dispute was then in progress.

"(iv) The individual's total or partial unemployment is due to a labor dispute which was or is in progress in a department or unit or group of workers in the same establishment."

It appears that the most appropriate category is (iii), as claimants are sympathy strikers. However, the specific category is not relevant to our analysis.

ers who are laid off after obtaining interim employment are entitled to receive unemployment benefits. *Great Lakes Steel Corp v Employment Security Comm, supra.* Presumably, the Legislature was aware of this decision when the 1974 amendment was enacted. Accordingly, we reject the employer's claim that its offer of work was not an offer of new work within the meaning of § 29(7).

Throughout the various arguments proffered, the employer has repeatedly highlighted its position that the claimants' refusal to cross the picket line is a violation of the no-strike provision of the collective-bargaining agreement. Be that as it may, the merits of a labor dispute are immaterial to determining entitlement to benefits under the MESA. *Lawrence Baking Co v Unemployment Compensation Comm,* 308 Mich 198, 208; 13 NW2d 260 (1944); *Linski v Employment Security Comm, supra; Lillard v Employment Security Comm,* 364 Mich 401, 418; 110 NW2d 910 (1961). By maintaining its neutrality, the MESC furthers the policy of this state providing that the unemployment compensation fund should not be used to finance a labor dispute nor aid an employer to break a strike. *Lawrence Baking Co, supra.* Therefore, the question of whether or not claimants' action is a violation of their collective-bargaining agreement is irrelevant.

The award of benefits to claimants is affirmed. In light of our decision we need not address the employer's claim that the refusal of its offer of work was without good cause.

Affirmed.